◼ In the Matter of ORAZIO GRECO, Petitioner, v BOARD OF EXAMINERS OF NURSING HOME ADMINISTRATORS, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Board of Examiners of Nursing Home Administrators which revoked petitioner's license as a nursing home administrator. Petitioner was employed by Parkview Nursing Home as administrator. As a result of an investigation of the nursing home industry, it was determined that petitioner had accepted unreported income in addition to his salary and had participated in several kickback schemes with nursing home suppliers. In return for his promise to assist the Special Prosecutor conducting the investigation to indict and convict petitioner's employer, Birnbaum, owner of Parkview Nursing Home, and one Ferrara, a linen supplier, petitioner was granted transactional immunity from prosecution by Special Prosecutor Miller for any criminal acts allegedly committed while at Parkview. Miller also promised to write to any State

agency that "might want to take away [petitioner's] license" to explain the extent of his co-operation. Petitioner thereafter testified before Grand Juries investigating Birnbaum and Ferrara, and at Birnbaum's trial when Birnbaum was convicted of larceny for receiving cash payments from vendors. Ferrara was indicted for perjury but petitioner never testified at his trial although notified he would be called as a witness. It is the contention of the office of the Special Prosecutor that petitioner avoided appearing and "deliberately secreted" himself until the trial was concluded by traveling between Utica, New York, and Florida. After Ferrara was convicted of perjury, Miller wrote to respondent alleging petitioner's failure of co-operation and enclosed a copy of the incriminating testimony given by petitioner at Birnbaum's trial. Respondent thereupon issued a notice of hearing and charges alleging that petitioner acted in contravention of certain nursing home regulations (see 10 NYCRR 96.1 [m] [8]). After a hearing, the administrative law judge concluded that petitioner violated section 2897 (subd 1, par [f]) of the Public Health Law, and failed to mitigate his misconduct by not fully co-operating with the authorities against Ferrara. His nursing home administrator's license was revoked and this proceeding ensued seeking annulment on several grounds. First it is petitioner's contention that the immunity obtained in the criminal proceedings bars revocation of his nursing home administrator's license. We cannot accept this argument. While a promise made by a Special Prosecutor must be treated as a highly significant factor by another State agency called on to enforce the promise, a prosecutor cannot divest an independent body of its lawful discretion by promising broad immunity (*Matter of Chaipis v State Liq. Auth.,* 44 NY2d 57, 64). If a license is involved, the authority may not ignore its responsibility as an arm of the State, and if a prosecutor has made a representation, the licensing authority must consider the extent of the licensee's co-operation as well as whether he continues to be a source of harm to the public. "Absent stated countervailing considerations, a promise or representation by one agent of the State should be fulfilled by other agents of the State" (*id.,* at pp 66-67). Moreover, a revocation of a license as a nursing home administrator is not that type of punishment which is considered a "penalty or forfeiture" which is immunized by CPL 50.10; rather, it falls closer into the category of a disciplinary sanction turning on the fitness of that particular person to practice under the license (*Matter of Anonymous Attorneys,* 41 NY2d 506; *Matter of Miles v Nyquist,* 60 AD2d 133). Here the findings of the hearing officer clearly demonstrate that he was aware of the limits of the Special Prosecutor's representations, that the latter's office "did not control the Public Health Department", and the failure of petitioner to fully co-operate with the Special Prosecutor. Substantial evidence supports respondent's determination. Petitioner also contends that he was deprived of effective assistance of counsel because of an alleged conflict of interest resulting from the formation of a partnership between his counsel and former Special Prosecutor Miller. The partnership was formed after the first administrative hearing where Miller testified, but before the second hearing some five months later. At that time, petitioner's counsel disclosed the formation of the partnership on the record and advised the hearing officer that he perceived no conflict of interest to either side. There was no objection from petitioner and the hearing proceeded. The record clearly demonstrates that petitioner was fully protected by "meaningful representation" throughout the entire proceeding by counsel of his own choosing (*People v Baldi,* 54 NY2d 137; *People v Aiken,* 45 NY2d 394). While it may have been preferable to make the disclosure of the formation of the partnership at an earlier date, we find no denial of effective assistance of counsel (see *People v Gomberg,* 38 NY2d 307). Lastly, we find the determination herein fully supported by sufficient and proper legal conclusions, neither

arbitrary nor capricious, and supported by substantial evidence. While petitioner may be a competent nursing home operator, it is up to the agency involved to determine what sanctions are necessary to protect the integrity of that agency and provide punishment for misconduct involving grave moral turpitude (*Matter of Pell v Board of Educ.*, 34 NY2d 222; *Matter of Loren v Board of Examiners of Nursing Home Administrators, Dept. of Health, State of N. Y.*, 77 AD2d 699, mot for lv to app den 52 NY2d 701). Determination confirmed, and petition dismissed, without costs. Kane, J. P., Casey and Yesawich, Jr., JJ., concur.

Mikoll and Weiss, JJ., dissent and vote to annul in the following memorandum by Weiss, J. Weiss, J. (dissenting). We respectfully dissent and would grant the petition and annul the determination. It is beyond cavil that the acts of misconduct with which petitioner was charged and which were sustained upon the hearing, fully support the sanction of revocation. Further, it is eminently clear that the determination is supported by substantial evidence in the record. But to end our inquiry there would require myopic vision. It remains imperative to consider the effects of petitioner's significant efforts in revealing the unlawful kickback scheme and the representations made by Special Prosecutor Miller (see *Matter of Chaipis v State Liq. Auth.*, 44 NY2d 57, 63). We cannot ignore the fact that petitioner was induced to sacrifice his constitutional right to remain silent. The only evidence in this record of his wrongdoing was furnished by him alone. He relied upon the commitment made by Miller, who not only breached his promise, but became the informant giving rise to the proceedings to revoke petitioner's license. Examination of Miller's testimony reveals two glaring bases for granting the petition. First, Miller testified that it was his opinion that the immunity he caused to be conferred "would cover those items as mentioned in the Statement of Charges and it would seem that once he receives immunity with respect to those areas that he cannot suffer any penalty or forfeiture whether it be a license or criminal penalty." Again, later he testified "I personally do not feel that the Department can do anything to Mr. Greco and use the basis of that action, the items that he testified in the Grand Jury because he has received immunity." Anything to the contrary notwithstanding, we do not believe the interest of justice is served by disregarding the representation of full immunity by a State officer made to induce a person to sacrifice his right against self incrimination in reliance upon such representation. We find the eloquence of then Chief Judge Breitel, writing for a unanimous court in *Matter of Chaipis v State Liq. Auth.* (44 NY2d 57, *supra*) applicable here: "The office of the special prosecutor and the State Liquor Authority are both but agents of the same State of New York, having a common public policy to enforce. Justice does not allow one agent to ignore promises made by the other, whatever the breadth of discretion involved. Instead, an earlier promise made by a prosecutor, an agent of the State, must be treated as a highly significant factor when the State agency with the power to enforce the promise is called upon to do so. The mere fact that an agent of the State made a representation to a criminal defendant and the defendant then pleaded guilty, assertedly in reliance on the representation, is entitled to weight. Even more important, emphatically, is an evaluation of the services performed by the promisee in return for the promise. Where those services have been significant, or have involved considerable risk or sacrifice on the defendant's part, failure to enforce the promise might do substantial injustice, not only to the defendant but to the public which is entitled to have the benefit of future co-operation, and is to be avoided. Not to be ignored, of course, is the primary duty of the State agency to fulfill its statutory responsibilities when confronted with the prosecutorial promise or

representation, but that duty must not be construed so narrowly as to exclude offsetting circumstances relating to the private and public justice of the matter" (*Matter of Chaipis v State Liq. Auth.*, 44 NY2d 57, 64-65, *supra*). The second error we find is attributed to respondent's reliance upon the Special Prosecutor's testimony concerning petitioner's alleged failure to co-operate by testifying at the Ferrara trial. It is conceded that he co-operated fully in the Birnbaum case. The majority erroneously includes the Ferrara case within the promise. It is to be remembered that the investigation of Ferrara was not even in existence at the time petitioner was given immunity, and his co-operation could not have been encompassed in the bargain. Moreover, and of greater significance, the proof in this record of petitioner's alleged failure to co-operate is found solely in Miller's testimony, itself based on hearsay several times removed. Petitioner was not served with a subpoena nor notified by letter to appear. Miller testified "I believe I *heard* from Mr. Usdin who tried the Frank Ferrara case that *he was told* that Mr. Greco had gone to Florida, that there was an illness in his family. I personally did not speak to Mr. Greco from probably 1977 up until today" (emphasis added). In our opinion, reliance upon testimony of this gradation to find that petitioner failed to keep his part of the bargain in return for immunity was erroneous as a matter of law.