■ In the Matter of ALEXANDER C. SRETER, Petitioner, v BOARD OF EXAMINERS OF NURSING HOME ADMINISTRATORS, DEPARTMENT OF HEALTH, STATE OF NEW YORK, Respondent. In the Matter of SUSAN SRETER, Petitioner, v BOARD OF EXAMINERS OF NURSING HOME ADMINISTRATORS, DEPARTMENT OF HEALTH, STATE OF NEW YORK, Respondent. — Proceedings pursuant to CPLR article 78 (transferred to this court by orders of the Supreme Court at Special Term, entered in Albany County) to review determinations of the Board of Examiners of Nursing Home Administrators suspending petitioners' licenses as nursing home administrators. Petitioners, mother and son, operate two Long Island nursing homes; they serve as coadministrators of the Nassau Nursing Home while Mr. Sreter is the sole administrator of the Van Doren Nursing Home. In June, 1977, after becoming aware that felony charges were to be brought against them, the Sreters offered to co-operate with a special investigation into nursing home corruption in return for the opportunity to negotiate a plea agreement. As a result of Mr. Sreter's co-operation with the prosecutor (see *People v Ferrara,* 54 NY2d 498, 503), the Sreters were each permitted to plead guilty to violating section 695 of the Tax Law, a misdemeanor, in full satisfaction of the more serious charges. They were each sentenced to a one-year period of conditional discharge and on the same day each was granted a certificate of relief from disabilities which barred automatic forfeiture of their administrator's licenses, but did not prevent the respondent board from charging them with having engaged in "[u]nethical conduct". Conviction of a crime constitutes such conduct (10 NYCRR 96.1 [m]) for which a range of penalties is available, including censure, suspension or revocation of the administrator's license (Public Health Law, § 2897, subd 1, par [f]). After a hearing at which the charges and the extent of Mr. Sreter's co-operation were explored, the hearing officer recommended that the board do no more than censure the Sreters. However, the board, adverting to "the serious nature" of the Sreters' crime "and its relationship to the practice of nursing home administration", sought to suspend their licenses for approximately 16 months. The claimed harshness of the penalty prompted the instant proceedings. Petitioners were convicted of a crime which carries with it a possible penalty of one year in prison and a $5,000 fine (Tax Law, § 695, subd [a]). This crime, involving as it does the fraudulent tax treatment of petitioners' personal expenses as nursing home business deductions, is a serious offense. Furthermore, the pleas covered only a portion of petitioners' tax reporting violations. That Sreter's co-operation with the authorities was appreciated and rewarded is apparent. Not only were petitioners allowed to plead to a misdemeanor, but outright revocation of their licenses, which could have been effected, was not ordered. And contrary to petitioners' assertions, this case differs from *Matter of Chaipis v State Liq. Auth.* (44 NY2d 57). Here, the prosecutor did not represent to the Sreters that their licenses would be preserved, nor did they rely on any such representation; indeed no promises were made save that petitioners would be afforded the opportunity, at some later date, to "discuss a possible plea agreement". This

pledge, ultimately fulfilled, enabled petitioners to avoid a more serious criminal penalty. In an attempt to buttress the analogy to *Chaipis*, petitioners made reference in their joint brief to a promise, evidently made by the special prosecutor as part of the plea agreement, to inform the board of petitioners' co-operation should it consider their guilty pleas "as a possible bar to the operation of health facilities in New York State". As the plea agreement is not in the record, we cannot heed this promise. But, even if it were before us, it would not create a *Chaipis*-type situation because this assurance was extended after Mr. Sreter's co-operation in the investigation had been completed, petitioners have not been permanently barred from being administrators, and, as already noted, the mitigating circumstances of co-operation with the special prosecutor's investigation accounts for the choice of license suspension over revocation. The fact that there was a proposed stipulation between the Department of Health and petitioners, limiting the penalty to censure, does not in any way fetter the board's discretion even if, as petitioners suggest, the board's executive director was aware of and approved the stipulation. The extent of the penalty was a matter for the entire board to decide. It was well within its right to reject the proposed stipulation. Nor can the fact that petitioners are competent nursing home administrators foreclose the board from fulfilling its responsibility to punish clear misconduct (*Matter of Greco v Board of Examiners of Nursing Home Administrators,* 91 AD2d 1108). Finally, in view of the offenses committed, we cannot say the penalty was disproportionate to the misconduct (*Matter of Loren v Board of Examiners of Nursing Home Administrators, Dept. of Health, State of N. Y.,* 77 AD2d 699, mot for lv to app den 52 NY2d 701). Determinations confirmed, and petitions dismissed, without costs. Kane, J. P., Mikoll, Yesawich, Jr., and Levine, JJ., concur.

Weiss, J., concurs in a separate memorandum. Weiss, J. (concurring). While in full agreement with the majority decision, I am constrained to write separately for the purpose of distinguishing this case from my dissent in the recent case of *Matter of Greco v Board of Examiners of Nursing Home Administrators* (91 AD2d 1108). Notwithstanding Sreter's full and effective co-operation, the critical fact remains that the special prosecutor made no promises other than to "discuss a possible plea agreement" at some future date. Clearly, then, this is not a *Chaipis*-type situation, but one in which the promisee voluntarily co-operated in the *hopes* of receiving leniency. Indeed, as the record demonstrates, Sreter received the full benefit in that instead of felony charges, he was permitted to plead to a reduced misdemeanor charge. Nor does Sreter's reference to a written plea agreement, which is not in the record and thus not properly before this court, change the fact that his co-operation had already been rendered in the absence of a binding commitment from the special prosecutor. Accordingly, inasmuch as the record confirms that the special prosecutor did not represent that Sreter's license would be preserved, and in view of the fact that his full co-operation is reflected in the penalty of license suspension instead of revocation, the determinations should be confirmed.