■ In the Matter of BARRY R. BRACKEN, Petitioner, v DAVID AXELROD, as Commissioner of the New York State Department of Health, et al., Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Board of Examiners of Nursing Home Administrators which suspended petitioner's license as a nursing home administrator for a period of 16 months and 25 days. As a result of a nursing home criminal investigation, petitioner, a nursing home administrator for 11 years, was indicted for grand larceny in the second degree, attempted grand larceny in the second degree, and two counts of offering a false instrument in the first degree. On June 14, 1979, petitioner signed a plea agreement in this matter with the Bronx County District Attorney's office. According to the agreement, in return for co-operating in an investigation of loan sharking operations by organized crime in The Bronx, petitioner would receive, *inter alia:* a misdemeanor plea, a sentence of probation on condition that he make full restitution, and a "recommendation that [his] license be continued and complete assistance with regards to any license revocation proceedings". Petitioner assisted in the loan sharking investigation by gathering information about Ralph "The General" Latino and testifying against him at a trial, and on October 14, 1980,

petitioner was permitted to plead guilty to petit larceny, a class A misdemeanor, in full satisfaction of the four felony charges. He was sentenced to three years' probation and restitution of approximately $30,000. Thereafter, respondent Board of Examiners of Nursing Home Administrators charged him with having engaged in unethical conduct in that he had been convicted of a crime (10 NYCRR 96.1 [m] [3]). Following a hearing, the hearing officer issued a decision recommending that the board reprimand petitioner, but not suspend or revoke his license. The board subsequently adopted the findings of fact and conclusions of the hearing officer; however, it suspended petitioner's license for 16 months and 25 days. The instant review proceeding ensued. Petitioner mistakenly relies on *Matter of Chaipis v State Liq. Auth.* (44 NY2d 57) as holding that since he fulfilled his plea agreement promise to co-operate in the loan sharking investigation, the board must now accept the District Attorney's recommendation to continue his license. *Matter of Chaipis v State Liq. Auth.* (44 NY2d 57, *supra*), on the contrary, requires only that a licensing agency "consider" and treat as a "highly significant factor" a prosecutor's recommendation in a plea agreement (*id.,* at pp 63, 64), not that the agency must accept such a recommendation (*id.,* at p 62). In *Chaipis* there was no indication that the licensing authority gave more than perfunctory consideration to the prosecutor's recommendation (*id.,* at p 63), and therefore the Court of Appeals remitted the case for reconsideration, but without dictating that the prosecutor's promise had to be enforced. Here, however, there are two indications that the board seriously considered the prosecutor's recommendation. First, the board adopted the hearing officer's findings of fact, which not only noted the existence of the plea agreement, but also stressed both petitioner's participation in the investigation, at possible risk of danger to himself, and the District Attorney's recommendation that petitioner's license be continued. Second, although the misconduct, as hereinafter described, was quite serious and could have justified revocation of petitioner's license (Public Health Law, § 2897, subd 1, par [f]), the board only suspended his license (*Matter of Streter v Board of Examiners of Nursing Home Administrators,* 92 AD2d 973). Thus, the *Chaipis* ruling was complied with. There is likewise no merit to petitioner's contention that the board erroneously relied on evidence outside the record in reaching its decision. The board stated that it imposed a suspension, rather than the hearing officer's recommendation of a reprimand, because of the serious nature of the crime of which petitioner was convicted, the crime's relationship to nursing home administration, and the board's taking official notice that it had previously censured petitioner. Contrary to petitioner's assertions, the record contained evidence concerning the relationship of petitioner's crime to nursing home administration. The plea agreement — on which petitioner relies and which he introduced into evidence at the hearing — states that in return for his co-operation in the loan sharking investigation, he would receive certain stated consideration "with regards to a current nursing home criminal prosecution presently pending against you." Nor can we say that petit larceny in connection with nursing home administration is not a serious crime. Not only are nursing homes a field of special State concern because of the potential for abuse to their elderly occupants (see *State of New York v Hudson Home for Aged,* 86 Misc 2d 1063, 1066, affd 62 AD2d 1121, mot for lv to app den 45 NY2d 706), but petitioner was required to repay approximately $30,000 in restitution for his crime, certainly a significant amount. While the board's prior censure of petitioner was not in the record before it, under subdivision 4 of section 306 of the State Administrative Procedure Act, "official notice may be taken of all facts of which judicial notice could be taken". Since a court may take judicial notice of its own records (*Matter of*

*Ordway,* 196 NY 95, 97; *Weinberg v Hillbrae Bldrs.,* 58 AD2d 546; *Matter of Fugazy,* 82 Misc 2d 135, 138), the board herein plainly was entitled to take notice of its prior censure of petitioner (see *Matter of Sanchez v Board of Examiners of Nursing Home Administrators,* 93 AD2d 916). *Matter of Simpson v Wolansky* (38 NY2d 391), *Matter of Avery v Rechter* (56 AD2d 963) and *Matter of Thompson v Lent* (53 AD2d 721), relied on by petitioner, involve situations in which there was reliance on information outside of the record which was not shown to be "facts of which judicial notice could be taken". Suspension of petitioner's license resulted from a discretionary, not a mandatory or automatic, action of the board and therefore was authorized despite petitioner's certificate of relief from disabilities (Correction Law, § 701, subd 3; *Matter of Sanchez v Board of Examiners of Nursing Home Administrators, supra*). *Matter of Hodes v Axelrod* (56 NY2d 930), dealing with automatic revocation of a nursing home license pursuant to Public Health Law (§ 2806, subd 5), is therefore inapposite. Finally, the penalty here is not so disproportionate to the offense as to be shocking to one's sense of fairness. Moreover, petitioner's competence as a nursing home operator does not preclude the board from exercising its responsibility to punish clear misconduct (*Matter of Greco v Board of Examiners of Nursing Home Administrators,* 91 AD2d 1108). Determination confirmed, and petitioner dismissed, without costs. Kane, J. P., Main, Mikoll, Yesawich, Jr., and Levine, JJ., concur.