■ In the Matter of ARNOLD M. ASMAN, Petitioner, v GORDON M. AMBACH, as Commissioner of the Department of Education of the State of New York, et al., Respondents. — Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law, § 6510, subd 5) to annul a determination of the Commissioner of Education which revoked petitioner's license to practice accounting. Following conviction upon a plea of guilty to attempted bribery of an Internal Revenue agent (US Code, tit 18, §§ 2, 201, subd [f]), petitioner, a licensed certified public accountant, was served with notice of hearing, petition and charges by the Department of Education through its State Board for Public Accountancy. The proceedings were conducted in an expedited procedure pursuant to section 6510 (subd 2, par d) of the Education Law, which statute was enacted specifically for use when charges are based upon conviction of a crime which is prima facie evidence of professional misconduct (Education Law, § 6509, subd [5], par [a], cl [ii]). Following submission of voluminous documentary evidence, testimony, a memorandum of law and oral argument, the Regents Review Committee, by a two to one vote, recommended that petitioner be found guilty of the charge and that suspension of license for two years be imposed, the dissenter recommending revocation. A July 30, 1982 vote of the Board of Regents recommending revocation was withdrawn upon stipulation after petitioner commenced a CPLR article 78 proceeding challenging the recommendation. Thereafter, on November 19, 1982, the Board of Regents reconsidered the matter and again recommended revocation. The Commissioner of Education adopted the recommendation and issued an order to such effect on December 1, 1982. In this CPLR article 78 proceeding, petitioner contends (1) that the absence of a transcript of the hearing was a denial of due process, (2) that the participation of Regent Sclafani as a member of the Board of Regents was improper since he had previously acted as chairman of the Regents Review Committee, and (3) that the Board of Regents failed to properly consider the mitigating evidence offered. Initially, we adhere to our recent decision upholding the propriety of expedited hearing procedures under section 6510 (subd 2, par d) of the Education Law in *Matter of Landesman v Board of Regents* (94 AD2d 827) (see, also, *Matter of Kaplan v Board of Regents,* 87 AD2d 952). Since petitioner's conviction of a crime was undisputed, he was automatically in violation of subdivision (5) of section 6509 of

the Education Law and subject to penalty. Petitioner did not object to the expedited proceedings pursuant to section 6510 (subd 2, par d), in which the misconduct charges were referred directly to the Regents Review Committee. Subdivision 2 specifies the contents required in a notice of hearing. While contested disciplinary proceedings and other disciplinary proceedings not resolved pursuant to the expedited procedures require a stenographic record of the hearing (Education Law, § 6510, subd 3, par a), there appears to be no requirement for a stenographic transcript in the expedited procedure (see Education Law, § 6510, subd 2, par d). Nor does the State Administrative Procedure Act support petitioner's argument. Subdivision 1 of section 401 of that law applies in licensing matters where the statute requires notice and a hearing *on the record*. Petitioner has not offered, and we have not found, any statutory requirement for a stenographic transcript in hearings under the expedited procedure authorized by subdivision 2 of section 6510 of the Education Law. Rather, there appears to be sound reasoning for the submission of matters where the disciplinary proceedings are based solely upon the conviction of a licensee of a crime under subdivision (5) of section 6509. The recommendations and ultimate determinations are essentially made expeditiously upon documentary evidence. Here, although petitioner, his witnesses and attorney offered oral testimony to the Regents Review Committee, the purpose was in mitigation of the penalty and not to controvert the misconduct charges or any issue of fact. Careful examination of the notice of hearing here discloses that petitioner was notified that he himself should be prepared to respond to inquiries: (1) concerning the relationship between the crime and his practice of accountancy; (2) his background and character as an individual and professional; (3) drug or alcohol abuse (not here applicable); and (4) his current professional practice and the relationship between the crime and his practice. The very nature of the expedited procedure envisions that petitioner would submit his evidence on these matters in written form prior to the hearing. The record includes voluminous evidence in documentary form to demonstrate mitigating circumstances in support of leniency in the imposition of a penalty, all of which was before respondents and this court. Since respondents did not dispute this character evidence, and petitioner was not precluded from submitting additional documentary evidence, the failure to provide a stenographic record of testimony worked no constitutional deprivation (*Matter of Economico v Village of Pelham*, 50 NY2d 120, 128; see, also, *Matter of Wallace v Murphy*, 21 NY2d 433; *Matter of Forrest v Ambach*, 93 AD2d 965; *Matter of Brennin v Kirby*, 79 AD2d 396, mot for lv to app dsmd 54 NY2d 830, cert den 456 US 908). The cases cited by petitioner in support of his contention are wholly distinguishable in that in each instance, the applicable statutes required a stenographic transcript of a truly adversarial hearing where contested issues were presented. Here, the Legislature specifically provided for a nonadversarial expedited procedure when the predicate for misconduct charges is the conviction of a crime and only the degree of punishment remains to be determined. No requirement for a transcript was made. Petitioner next contends that the participation of Regent Sclafani, both on the Regents Review Committee (where he was the sole dissenter and recommended revocation instead of suspension) and as a voting member of the Board of Regents, was improper, citing *Matter of Lowcher v New York City Teachers' Retirement System* (54 NY2d 373). We do not disagree with the *Lowcher* decision, which held that "it is, indeed, improper for an impartial reviewer of an issue of fact to sit in review of his own prior determination of fact" (*id.,* at p 377). Here, unlike *Lowcher*, there is no disputed issue of fact. Implicit in its decision in that case, the Court of Appeals found that the circumstances prevailing in a heavily contested factual situation required reversal "[o]n the facts and circumstances of this

case" (*id.*, at p 375). Subdivision 4 of section 6510 of the Education Law states that at least one member of the Regents Review Committee must be a member of the Board of Regents, and nowhere in the statute is such dual participation proscribed. Nor do we find error in respondents' failure to recite whether consideration was given to petitioner's co-operation with the government as a mitigating factor. It is now well established that promises by prosecutorial agencies to make defendant's co-operation known to licensing bodies in subsequent disciplinary proceedings are neither binding upon such bodies nor divest such bodies of their right to exercise discretion in the imposition of a penalty (*Matter of Chaipis v State Liq. Auth.*, 44 NY2d 57; *Matter of Sreter v Board of Examiners*, 92 AD2d 973; *Matter of Greco v Board of Examiners*, 91 AD2d 1108). Moreover, there is nothing in the record to suggest that petitioner's license would not be revoked in return for his co-operation. Rather, the sentencing minutes in the Federal court show that both petitioner and his attorney expected that he would lose his license. Finally, the punishment cannot be said to be so disproportionate as to be shocking to one's sense of fairness (*Matter of Pell v Board of Educ.*, 34 NY2d 222; see, also, *Schaubman v Blum*, 49 NY2d 375). Petitioner admitted negotiating a bribe in the sum of $22,500 to influence his client's income tax audit. *Matter of Pell* (*supra*) tells us that bribery is a gravely moral crime, for which this court has confirmed revocation of certified public accountants' licenses (see *Matter of Landesman v Board of Regents*, 94 AD2d 827, *supra; Matter of Stubenhaus v State Educ. Dept.*, 88 AD2d 1102; *Matter of Dachowitz v Board of Regents*, 72 AD2d 651). Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Yesawich, Jr., and Weiss, JJ., concur.

Mikoll and Levine, JJ., dissent and vote to annul in the following memorandum by Levine, J. Levine J. (dissenting). We respectfully dissent. We may assume, *arguendo,* that New York constitutionally could have elected to provide for automatic revocation of a professional's license to practice upon conviction of a felony. However, by statute, the State has chosen not to do so if, as here, the convicted felon has obtained a certificate of relief from disabilities (Correction Law, § 701, subd 2; *Matter of Hodes v Axelrod*, 56 NY2d 930). At this point, for procedural due process purposes, petitioner's property interest in his license to practice accountancy continued to exist to the extent of the mandated review of mitigating factors which might impel the exercise of discretion against revocation (see *Matter of Economico v Village of Pelham,* 50 NY2d 120, 127). Perhaps, under the cost-benefit due process analysis set forth in *Mathews v Eldridge* (424 US 319) to determine what process was due petitioner, his right to be heard could have been satisfied by limiting it to the submission of documentary evidence and written arguments in his own defense and in rebuttal of unfavorable written materials submitted by the Education Department's Office of Professional Discipline (cf. *Matter of Forrest v Ambach,* 93 AD2d 965, 966). Indeed, there is statutory verbiage which suggests that the right to be heard under the expedited procedure before the Regents Review Committee could be thus restricted (Education Law, § 6510, subd 4, par b). However, respondents' own administrative construction of the statute was not to limit the expedited procedure to a review of documents. They sent petitioner a paper denominated a "notice of *hearing*" (emphasis added) in which they advised him of the Regents Review Committee's option to ask him questions at the hearing to which he was to be prepared to respond. Respondents' construction of the statute opening the expedited, procedure to such oral evidence was not unreasonable, given the licensee's statutory right to appear and be represented by counsel before the Regents Review Committee (Education Law, § 6510, subd 4, par b). Moreover, the uncontested averments of petitioner's attorney's affidavit establish that the Regents Review Committee actually availed itself of the opportunity to elicit oral evidence by question-

ing petitioner on various ameliorating circumstances, and that his request that minutes of the hearing be taken was summarily refused. Thus, it seems to us indisputable that even under the admittedly restrictive hearing requirements of the expedited procedure employed here, the Regents Review Committee performed the traditional, two-fold role assigned to the first stage in a bifurcated administrative agency decision-making process, namely, developing the record for review by the ultimate agency decision maker as well as making a recommendation for the final disposition. It seems equally undeniable that here the ultimate agency decision maker (the Board of Regents) chose to disregard its Regents Review Committee's recommendation of a penalty less severe than revocation without having had any access to a portion of the evidence upon which that recommendation was based. Merely because the Board of Regents gave as its reason for disregarding the Regents Review Committee's recommendation, that it took "a more serious view of the misconduct", does not obviate the significance of this gap in the board's information base. By statutory law, the matter of discipline for a licensee's misconduct is not totally dependent upon the fact or gravity of the commission of the offense, once the licensee has received a certificate of relief from disabilities. By way of analogy, what happened here is the same as a criminal court imposing sentence solely on the basis of the circumstances of an offense while consciously refusing even to hear available mitigating data concerning the circumstances of the offender. Unquestionably, administrative agencies now have wide discretion in governing their own administrative procedures of disposition and immunity from judicial inquiry into their decision-making processes (see, e.g., *United States v Morgan*, 313 US 409, 422; 3 Davis, Administrative Law Treatise [2d ed], §§ 17:4-17:5, pp 285-297). However, the infirmity presented here is evident without probing into the administrative process by which the Board of Regents reached its determination. Not only was there no transcript of the Regents Review Committee's hearing, there was no summary of the evidence upon which the committee based its recommendation, no explanation by the committee of its reasoning and no opportunity before the board for petitioner to analyze or advance arguments concerning that evidence. Research has disclosed no case where the deciding officer of an administrative agency has been permitted thus to determine the ultimate issue without having available at least some form of access to all of the basic information adduced during the preliminary stage of the proceeding. The weight of precedent is to the contrary. In the first of the *Morgan* cases (*Morgan v United States,* 298 US 468), the United States Supreme Court held: "The 'hearing' is the hearing of evidence and argument. If the one who determines the facts which underlie the order has not considered evidence or argument, it is manifest that the hearing has not been given. * * * It is no answer to say that the question for the court is whether the evidence supports the findings and the findings support the order. For the weight ascribed by the law to the findings — their conclusiveness when made within the sphere of the authority conferred — rests upon the assumption that the officer who makes the findings has addressed himself to the evidence, and upon that evidence has conscientiously reached the conclusions which he deems it to justify. *That duty cannot be performed by one who has not considered evidence or argument*" (*id.,* pp 480-481; emphasis added). The continued vitality of this holding in *Morgan* I is attested to by a leading commentator on administrative law (3 Davis, Administrative Law Treatise [2d ed], § 17:3, p 281) and by the following excerpt from the United States Second Circuit Court of Appeals decision in *Ostrowski v City of New York* (601 F2d 629, 631): "Since the decisionmaker (the Commissioner) did not have a complete record of the hearing in these disciplinary proceedings and since the affected employees had no opportunity to see and comment on the

hearing officer's summary of the record and his recommendation, we think appellants' due process challenge is a grave one. See, e.g., *Morgan* v. *United States,* 304 U.S. 1, 58 S.Ct. 999, 82 L.Ed. 1129 (1938); *Morgan* v. *United States,* 298 U.S. 468, 482, 1288, 80 L.Ed. [*sic*] 56 S.Ct. 906, (1936); *Kinsella* v. *Board of Education,* 378 F.Supp. 54, 59-60 (W.D.N.Y. 1974) (three judge court), aff'd. mem., 542 F.2d 1165 (1976)." Nor do the New York cases support the total autonomy of administrative agency processes sanctioned by the majority here (see, e.g., *Matter of Economico v Village of Pelham,* 50 NY2d 120, *supra; Matter of Wallace v Murphy,* 21 NY2d 433; *Matter of Taub v Pirnie,* 3 NY2d 188; *Matter of Weekes v O'Connell,* 304 NY 259). Finally, the fundamental unfairness of the board's process of determination cannot be overcome by the simply expedient of merely declaring that there was no factual dispute to be decided here. To be sure, petitioner was precluded from contesting the fact of professional misconduct arising out of his conviction. However, in a statutorily required hearing on possible mitigating factors concerning the established misconduct, there may be factual disputes over the existence and significance of such factors. That such was the case here is demonstrated by the diametrically opposing positions taken by petitioner and respondents in their briefs concerning whether petitioner's offense was an isolated instance of criminality or instead was part of a pattern of misconduct. This distinguishes the instant case from *Matter of Landesman v Ambach* (94 AD2d 827), where respondents did not dispute the truth of petitioner's mitigating factors and the record did not disclose any submission of oral evidence. For the foregoing reasons, we would annul the Commissioner of Education's determination, and remit to the Board of Regents for further proceedings not inconsistent herewith.