■ In the Matter of ARON FEUEREISEN, Petitioner, v DAVID AXELROD, as Commissioner of the Department of Health of the State of New York, et al., Respondents. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the Board of Examiners of Nursing Home Administrators which suspended petitioner's license as a nursing home administrator for a period of one year. ¶ Petitioner was the licensed administrator of and a partner in the Far Rockaway Nursing Home. On June 18, 1981, he pleaded guilty to one count of conspiracy in the sixth degree and two counts of willful violation of health laws. All three crimes are misdemeanors. This plea was in full satisfaction of a 29-count indictment which had been filed against petitioner and his partner for their mismanagement of the nursing home and its funds. Petitioner entered his plea pursuant to *North Carolina v Alford* (400 US 25), whereby he maintained his innocence while pleading guilty, ostensibly to avoid the expense and pain to his family which a trial would engender. ¶ Upon his guilty plea, petitioner was fined $2,500. He was subsequently granted a certificate of relief from disabilities. Thereafter, respondent State Board of Examiners of Nursing Home Administrators (the board) found petitioner guilty of unethical conduct and suspended his license as a nursing home administrator for one year. ¶ In this proceeding, petitioner contends that the board erred in suspending his license on the basis of his criminal conviction. He argues that his *Alford* plea, whereby he continued to protest his innocence of the charges, requires respondents to go beyond the fact of his conviction to establish that he is actually guilty of unethical conduct before suspending his license. The relevant statute and regulations do not support his position. ¶ Pursuant to section 2897 (subd 1, par [f]) of the Public Health Law, the license of a nursing home administrator may be suspended, after a hearing, upon a showing that he has "been guilty of unethical conduct as defined by rules adopted by the board and certified by the commissioner". In 10 NYCRR 96.1 (m) (3), as adopted by the board and certified by the commissioner, "unethical conduct" is defined specifically for the purpose of section 2897 to include "conviction of a crime". ¶ We have on previous occasions upheld respondents' determinations, based on the foregoing regulation, that conviction of a crime was sufficient to satisfy the statutory standard of "unethical conduct" for the purpose of disciplinary action against nursing home administrators (*Matter of Sanchez v Board of Examiners*, 93 AD2d 916; *Matter of Sreter v Board of Examiners*, 92 AD2d 973). Under the statutory and regulatory framework, the operative event triggering the disciplinary mechanism is the conviction, and not any admission of wrongdoing in the criminal

proceeding. Therefore, that petitioner's conviction was based on an *Alford* plea without an admission of actual guilt is irrelevant for purposes of determining whether he was subject to sanctions. This was precisely the holding in *Matter of Hopfl* (48 NY2d 859), where the Court of Appeals upheld an attorney's automatic disbarment upon conviction of a felony, similarly resulting from an *Alford* plea, stating, "The statutory sanction was rendered no less operative because the plea had been entered pursuant to *North Carolina v Alford* * * * Although appellant did not admit his guilt, nonetheless he stood convicted of a felony" (*id.*, at p 860). ¶ Petitioner's contention that he was denied procedural due process in the course of the proceedings appealed from is also unpersuasive. He refers to the fact that the administrative law judge's report recommending that petitioner's license be suspended was sent to him with a cover letter dated February 28, 1983, stating that any comments concerning the report should be received by the board within 15 days of the date of the letter, i.e., by March 15, 1983. Under a cover letter dated March 9, 1983, petitioner received a second copy of the judge's report, amended only insofar as to state that petitioner's conviction of two counts of willful violation of health laws constituted unclassified misdemeanors rather than violations, as previously stated. This cover letter did not solicit comments nor, obviously, did it stipulate a date before which they were to be received. Having received no comments from petitioner as of March 17, 1983, the board met and ruled on his case. Petitioner contends that the sending of the revised report started a new 15-day period within which to comment on it and that the board erred in acting on it on March 17. We cannot agree. The revised report was identical to the original sent out on February 28, 1983, with the exception of the minor change as to the characterization of two of the crimes of which petitioner stood convicted. It cannot reasonably be concluded that this correction, which was an accurate statement of the facts, could have engendered any new comments from petitioner which would have altered the outcome of his case. ¶ Finally, we do not find the penalty of a one-year suspension of petitioner's license to be excessive. It is not so disproportionate to petitioner's malfeasance as to shock one's conscience and mandate a reduction (see *Matter of Pell v Board of Educ.*, 34 NY2d 222, 240). ¶ Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Casey, Mikoll, Levine and Harvey, JJ., concur.