In the Matter of CATSKILL CENTER FOR CONSERVATION AND DEVELOPMENT, INC., et al., Appellants, v THOMAS C. JORLING, as New York State Commissioner of Environmental Conservation, et al., Respondents. (And Another Related Proceeding.)

Third Department, November 15, 1990

**APPEARANCES OF COUNSEL**

*Burke, Cavalier, Lindy & Engel, P. C. (Andrew W. Gilchrist* of counsel), for appellants.

*Greg D. Lubow* for Village of Tannersville, appellant.

*Robert Abrams, Attorney-General (Francis J. Keehan, Peter H. Schiff and Douglas H. Ward* of counsel), for Thomas C. Jorling, respondent.

## OPINION OF THE COURT

MIKOLL, J.

■ ■ ■ This appeal presents three questions: (1) whether respondent Commissioner of Environmental Conservation properly determined that the scope of review of the water supply permit application submitted by petitioner Village of Tannersville in Greene County was limited to issues incidental to the transfer of ownership, (2) whether the Commissioner's determination properly limited the village's withdrawal of water from the Schoharie Creek to no more than 100,000 gallons per day, and (3) whether the Commissioner improperly relied on material outside the record in making his determination. The response to the first two inquiries is in the affirmative and the third in the negative; the judgment of Supreme Court should therefore be affirmed.

On or about May 30, 1973 the village acquired by deed from the Tannersville Water Company (hereinafter the Company) riparian rights to use Schoharie Creek at Dibble's Dam for a water supply. The Company, formed in 1901, first received approval for the water supply from the State Water Supply Commission (a predecessor of respondent Department of Environmental Conservation [hereinafter DEC]) in 1907. In 1958, the Company obtained approval for added reservoirs from the Water Power and Control Commission (successor to the Water Supply Commission and also a predecessor of DEC) (hereinafter the 1958 proceeding). Thereafter, in 1980 the village applied to DEC for a permit to ratify its 1973 acquisition of the water supply rights. The application for this permit was deemed complete in November 1987. On February 26, 1988, DEC issued a water supply permit to the village. The permit temporarily limited water withdrawal to 50,000 gallons per day and restricted the use of the creek to an auxiliary rather than a primary water source.

On June 9, 1988 a legislative hearing and a prehearing issues conference were conducted before an Administrative Law Judge (hereinafter ALJ). All parties to this case agreed that it was first necessary to resolve the threshold issue of whether a change in ownership of the water system, as here, required an in-depth review by DEC staff. The ALJ received the parties' briefs and made a ruling on the threshold issue stating, *inter alia*, that it was the long-standing policy of DEC to transfer the authorization of an existing private or municipal water supply permit holder to its successor in interest

without any diminution of the rights or privileges granted unless there are compelling reasons not to do so. The ALJ also held that because the village acquired "the right to take water from the [creek] in unspecified quantities as an auxiliary source of water supply", the 50,000-gallon-per-day temporary authorization limitation was improper.

On appeal of the ALJ's decision, the Commissioner partially reversed and directed that DEC issue a permit to the village allowing it to take up to 100,000 gallons of water per day from the creek at Dibble's Dam as an auxiliary source of water. The Commissioner based the 100,000-gallon-per-day limitation on the "Record of Proceeding" accompanying the 1907 decision of the Water Supply Commission, noting that the Company limited its request to a taking of 100,000 gallons per day. The Commissioner also concluded that the issue as to whether the Company in fact withdrew more water than authorized was a compliance matter and did not change the authorization. The Commissioner further related that since the present application was for ratification of a new water supply source in addition to the ratification of the transfer of ownership, the application was an "unlisted action" for purposes of the State Environmental Quality Review Act (ECL art 8) (hereinafter SEQRA) (see, 6 NYCRR 617.2 [kk]). The Commissioner then found that this joint project was an action that would not have a significant effect on the environment and directed DEC to issue an unconditional negative declaration. The Commissioner also stated that if any party wished to apply for a greater taking or to limit the taking, a separate application should be filed with DEC.

The parties subsequently commenced these two CPLR article 78 proceedings to review the Commissioner's determination. Supreme Court dismissed the petition in the first proceeding for failure to state facts upon which relief could be granted. Supreme Court also, inter alia, upheld the 100,000-gallon-per-day limitation and found that the Commissioner had not improperly relied on material outside the record in utilizing the 1907 record of proceeding. The court reasoned that "a court may take judicial notice of court records" and "an agency may take official notice of its own hearings and proceedings". Supreme Court also held that the Commissioner was not precluded by collateral estoppel from imposing any limitation on withdrawals from the creek because of the 1958 proceeding since there was no identity of issues between the present proceeding and the 1958 proceeding. The court further

concluded that all SEQRA requirements had been complied with. The instant appeal ensued.*

██ Supreme Court correctly ruled that the Commissioner's determination, that the scope of review of the water supply permit issued to the village was limited to issues incidental to the transfer of ownership rather than a complete review of the adequacy and quality of the supply of water and the impact upon the watersheds and the water supply of the State in general, was rational and not in violation of the ECL and the regulations promulgated thereunder. Petitioners' position that ECL 15-1503 (2) and the regulations thereunder require that DEC undertake a complete and thorough review of all applications pertaining to the acquisition of an existing water supply is not persuasive.

DEC is the agency charged with the responsibility of carrying out the potable water supply policies of the State (ECL 15-0109; *see, Great Neck Water Auth. v Citizens Water Supply Co.,* 12 NY2d 167, 174). The Commissioner's construction and interpretation of the statute under which he functions is entitled to the greatest weight in a proceeding, such as this, initiated to determine whether he has acted arbitrarily or capriciously *(see, Matter of Huntington TV Cable Corp. v State of N. Y. Commn. on Cable Tel.,* 94 AD2d 816, 818-820, *affd* 61 NY2d 926). Further, judicial review of an administrative agency's determination is confined to whether it had a rational basis *(Matter of Crescent Estates Water Co. v Public Serv. Commn.,* 159 AD2d 765, 768).

In light of these principles, where, as here, the permit sought involved a transfer of ownership ratification, DEC's application of the limited standard of review was reasonable and rational. It is comparable to an applicant seeking renewal of a permit which does not contain a material change in permit conditions *(see, Great Neck Water Auth. v Citizens Water Supply Co., supra).* Further, an application for a renewal permit is treated differently than an application for a new permit under ECL 70-0115 *(see,* 6 NYCRR 621.13). Thus, it appears that the Commissioner's determination limiting the scope of review to issues that were incidental to the transfer of ownership complied with ECL 15-1503 (2) and was properly

---

* The village commenced the second CPLR article 78 proceeding and Supreme Court granted its petition to the extent that issues regarding conditions of the water permit were remitted to the Commissioner to be decided in accordance with the court's decision. Both the village and petitioners in the first proceeding have appealed.

upheld *(see, Kurcsics v Merchants Mut. Ins. Co.,* 49 NY2d 451, 459).

■ The village's contention that the Commissioner erred in authorizing the village to withdraw only up to 100,000 gallons of water per day from the creek is not persuasive. We also reject the village's claim that DEC should be collaterally estopped from imposing this withdrawal limit because the village acquired the rights of the Company which drew more than 100,000 gallons per day from the creek and that a 1958 decision of the Department of Conservation, Water Power and Control Commission had authorized the withdrawal of up to 1,000,000 gallons of water per day. Additionally, we disagree with the claim that the Commissioner improperly concluded that only that part of the permit application seeking the new ground water supply necessitated an environmental review and assessment under SEQRA and not the entire application.

The rights which the village acquired from the Company were properly ruled to be limited by the Commissioner's determination that the request of the Company spokesman contained in the "Record of Proceeding" accompanying the 1907 decision was for a taking of up to 100,000 gallons per day. The conclusion reached by the Commissioner grounded on the rights possessed by the transferor Company had a rational basis in the record, was not arbitrary and capricious and, therefore, should be upheld *(see, Matter of Pell v Board of Educ.,* 34 NY2d 222, 231; *Matter of Crescent Estates Water Co. v Public Serv. Commn.,* 159 AD2d 765, 768, *supra).* As previously concluded, the Commissioner's standard of review for the water permit was proper. The doctrine of collateral estoppel cannot be applied here as the decision of the Commissioner limiting the water withdrawal to 100,000 gallons per day is rational and the record reveals that water withdrawal was not an issue in the 1958 proceeding.

■ The argument that the Commissioner should not have relied on the 1907 record because it contained material outside the record is without merit. The Commissioner had properly taken official notice of the 1907 record of his agency *(see,* State Administrative Procedure Act § 306 [4]; *Matter of Bracken v Axelrod,* 93 AD2d 913, 914, *lv denied* 59 NY2d 606). There was no factual dispute as to the content of the 1907 record. The only disagreement was as to the interpretation of it. DEC's interpretation of the statement of the Company spokesman contained in its own record is reasonable and as such should be upheld on judicial review *(see, Kurcsics v*

*Merchants Mut. Ins. Co.,* 49 NY2d 451, 459, *supra).* Any reliance on *Matter of Crater Club v Adirondack Park Agency* (86 AD2d 714, *affd* 57 NY2d 990) by petitioners is misplaced. That case did not involve an official public record which could be judicially noticed *(see,* State Administrative Procedure Act § 306 [4]).

MAHONEY, P. J., KANE, YESAWICH, JR., and HARVEY, JJ., concur.

Judgment affirmed, without costs.