■ In the Matter of JOSEPH M. RYAN et al., Respondents, v ADIRONDACK PARK AGENCY et al., Appellants.—Mikoll, J. P. Appeal from a judgment of the Supreme Court (Viscardi, J.), entered April 23, 1991 in Washington County, which, *inter alia,* partially granted petitioners' application, in a proceeding pursuant to CPLR article 78, to annul a determination of respondent Adirondack Park Agency requiring petitioners to comply with certain area and height specifications in the construction of a single-family residence.

The primary question presented on this appeal is whether

_____

Supreme Court properly ruled that respondents' determination that petitioners' new dwelling violated a building permit condition limiting floor space to 1,500 square feet was arbitrary and capricious. In our view respondents' determination had a rational basis and was not arbitrary and capricious.

On March 3, 1982 respondent Adirondack Park Agency (hereinafter respondent) issued permit No. 82-1 approving a proposal by Oasis Properties Enterprises Corporation (hereinafter Oasis) to develop a 20-lot residential subdivision known as "Royal Anchorage Estates" on the shores of Lake George in Washington County. The area had a "low intensity use" classification. Oasis claimed that dilapidated structures of the subdivision could be replaced with residential structures in a manner consistent with low intensity use requirements. Oasis also indicated by letter that the proposed dwellings would be one and two stories with about 1,500 square feet of floor space and set back the same distance from the lake as the existing camp structures. Finding of fact No. 12 in the permit stated: "The sponsor has also proposed that all single family dwellings will have subdued earth-toned exteriors, one or two stories, and 1500 square feet of floor space. Most will be built by the developer, Robert W. Sinnott." The permit itself (1) authorized the subdivision as described in the permit, (2) required that the new residential structures be set back at the same distance from the mean high water mark of Lake George as the camp structures they were replacing, (3) limited the cutting of vegetation along the shoreline and along the newly created lots, (4) indicated how the sewage system and roads were to be built, and (5) limited the construction of boathouses, docks and additional buildings. A modified permit No. 82-1A issued April 20, 1982 allowed the creation of a total of 23 residential lots and incorporated all the facts, terms and conditions of the original permit.

In September 1985 petitioners purchased lot No. 8 of the subdivision from individuals who had acquired the lot from Oasis by deed which specified that the conveyance was subject to the terms, provisions and conditions of the permits. Further covenants provided that all plans comply with standards set by respondent, that all setback rules and regulations be subject to the setback requirements set forth in the rules and regulations of respondent and that all dwelling houses have at least 1,500 square feet of living area.

In the summer of 1988 petitioners appeared to be erecting a three-story dwelling more than 40 feet high, 75 feet long, 40 feet wide and exceeding 5,000 square feet of floor space. The

structure was set back only 39 feet from the mean high water mark of Lake George rather than the 45 feet required by permit No. 82-1. The building was also highly visible from Lake George due to the elimination of vegetation during construction. The apparent deficiencies were brought to the attention of respondent's enforcement committee which, after a meeting in December 1988, found that petitioners' building violated, *inter alia,* the size limitation of finding of fact No. 4 and condition No. 1 of permit No. 82-1. The committee rejected petitioners' offers to reduce the size of the building to under 3,000 square feet and to take reasonable measures to comply with the permit, and made a proposal which was rejected by petitioners. The committee did not levy any fines. After petitioners processed an administrative appeal, respondent affirmed the committee's determination.

Petitioners then commenced this CPLR article 78 proceeding in Supreme Court, resulting in an order which, *inter alia,* annulled the committee's determination to enforce the 1,500 square feet living space limitation. Supreme Court held that the limitation was arbitrary and capricious because the living area limitation was a minimum and not a maximum. This appeal by respondents ensued.

Respondents' contention, that the determination that the floor space limitation was rational, is well taken. In view of the findings of fact in the permit that describe single-family dwellings of one and two stories and 1,500 square feet and the limitation in condition No. 1 of the permit requiring the new building to be as "described" in the permit, the conclusion that petitioners' three-story building containing 5,000 square feet of floor space violated the permit had a rational basis and was not arbitrary and capricious *(see, Matter of Parkview Assocs. v City of New York,* 71 NY2d 274, *cert denied* 488 US 801; *Matter of Catskill Center for Conservation & Dev. v Jorling,* 164 AD2d 163, 167, *lv granted* 77 NY2d 805, *appeal dismissed* 78 NY2d 919; *Matter of Crater Club v Adirondack Park Agency,* 86 AD2d 714, 715, *affd* 57 NY2d 990).

Supreme Court's conclusion that the permit required a minimum of 1,500 square feet of floor space so that all dwellings in the development would have a value commensurate with the value of lake shore properties is inconsistent with the function of respondent and the purpose of the permit, namely, preservation of the Adirondack Park and its resources together with the environment and scenic attributes of the area. Respondent's purpose is not to assure the eco-

nomic success of the developer as Supreme Court's reasoning seems to suggest.

We perceive no unfairness to petitioners. Oasis applied for a permit to construct 1,500 square feet, single-story buildings and that is what the permit approved. Petitioners should have realized that construction of a building in excess of the permit's limitations would likely bring problems.

Levine, Mahoney, Casey and Harvey, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as partially granted petitioners' application; said application denied, petition dismissed and counterclaim for enforcement granted; and, as so modified, affirmed. [As amended by order entered Jan. 7, 1993.]