In the Matter of MARY M., Respondent,* v JAMES M. CLARK, as President of the State University of New York at Cortland, Appellant.

Third Department, March 8, 1984

* Names used herein are fictitious for purposes of publication.

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Peter G. Crary* and *Peter J. Dooley* of counsel), for appellant.

*Haskell, Foley, Meldrim & Shay (Richard J. Shay* of counsel), for respondent.

*Ronald H. Sinzheimer* for Student Association of State University of New York, Inc., *amicus curiae.*

*Covington & Burling (Eugene D. Gulland* and *Irving C. Faber* of counsel), special counsel to *Sheldon Elliot Steinbach,* general counsel for American Council on Education, *amicus curiae.*

### OPINION OF THE COURT

MIKOLL, J.

This is an appeal from Special Term's annulment of petitioner's suspension from the State University of New York at Cortland (hereafter Cortland) for cheating. Special Term found that the procedures followed by Cortland in suspending petitioner violated the State Administrative Procedure Act, due process of law, Cortland's own procedural rules as set out in the student handbook, and section 41 of the General Construction Law. By judgment entered March 9, 1983, Special Term annulled the suspension and ordered expungement of all references to petitioner's cheating and plagiarism from her records.

Petitioner was accused by Professor Eberhard Alsen of "collaboration (or plagiarism)" with another student in the preparation of a term paper. She and the other student were requested to meet with the professor at his office and there both signed an admission that they collaborated on the assignment.

Later the same month, petitioner was accused of cheating on an examination given by Professor Thomas Cain and subsequently petitioner requested a hearing before the academic grievance tribunal on this charge. A hearing was held before the tribunal composed of two faculty members, one student and an administrator. Petitioner and Professor Cain testified to their versions of the events. Petitioner was found guilty by a vote of 2 to 1. A memorandum summarizing the testimony, the tribunal's vote and carrying a recommendation of dismissal was forwarded to Cort-

land's vice-president, Dr. Charles O. Warren. He accepted the tribunal's finding and imposed a one-semester suspension and a right to readmission after reapplication and evaluation thereof by Cortland. Petitioner was informed of the action by letter dated December 17, 1982 and was further advised that the decision was on file in the vice-president's office for petitioner's review.

■ There must be a reversal. Addressing *ad seriatim* the bases of Special Term's decision to annul, we first hold that Special Term erred in concluding that article 3 of the State Administrative Procedure Act was applicable to the instant proceeding and that a failure to afford petitioner the due process rights enunciated therein requires an annulment of the instant disciplinary proceedings. The State Administrative Procedure Act was not intended to apply to all State agency proceedings. Article 3 of the State Administrative Procedure Act indicates that the statute has applicability solely to adjudicatory proceedings required by law to be made on the record (State Administrative Procedure Act, § 102, subd 3). There is no statute or regulation which requires the instant college disciplinary proceedings to be on the record, nor any constitutional requirement therefor, and, consequently, we hold that the State Administrative Procedure Act is not applicable to the instant proceeding (*Matter of Asman v Ambach,* 98 AD2d 847; *Matter of Landesman v Board of Regents,* 94 AD2d 827; *Matter of Vector East Realty Corp. v Abrams,* 89 AD2d 453, app withdrawn 58 NY2d 973).

The seminal case in the field of disciplinary proceedings for misconduct at tax-supported institutions of higher education, *Dixon v Alabama State Bd. of Educ.* (294 F2d 150, cert den 368 US 930), has set down governing precepts in the following words: "Whenever a governmental body acts so as to injure an individual, the Constitution requires that the act be consonant with due process of law. The minimum procedural requirements necessary to satisfy due process depend upon the circumstances and the interests of the parties involved" (*supra,* at p 155).

■ We find that due process was accorded this petitioner under the *Dixon (supra)* test and its progeny. Petitioner was served with a written notice of charges; she was made

aware of grounds which would justify her expulsion or suspension by way of the student handbook; the hearing tribunal afforded her an opportunity to hear and confront the evidence presented against her and an opportunity to be heard and to offer other evidence if she chose; she was accorded the right to have someone from the college community to assist her in the proceedings; she was informed of the tribunal's finding; she was given access to its decision for her personal review; and, finally, she was advised in writing of the discipline imposed. We find that this procedure adequately satisfied due process requirements in a collegial atmosphere (see *Yaretsky v Blum,* 629 F2d 817, revd on other grounds 457 US 991; *Matter of Rodriguez v Ward,* 64 AD2d 792; *Matter of Rothkoff v Ratner,* 104 Misc 2d 204).

We concur with the policy considerations enunciated in cases dealing with student discipline which recognize that the student's welfare is best served by a nonadversarial setting which emphasizes the educational functions of disciplinary proceedings (cf. *Goss v Lopez,* 419 US 565). We hold, too, that Special Term erred in finding that a written record of the proceedings and the right to counsel were rights fundamentally due petitioner (*Mathews v Eldridge,* 424 US 319). Such mandates would be counterproductive to the balance struck here between the rights of the student and the university. To do so would place on the university system an onerous fiscal and administrative burden. We note, too, that *Matter of Ryan v Hofstra Univ.* (67 Misc 2d 651) is distinguishable on its facts from the instant matter.

We disagree, as well, with Special Term's conclusion that section 41 of the General Construction Law is applicable to Cortland's disciplinary tribunal. The statute refers to functions of public officers or persons charged with a public duty. Public officers are persons whose duties involve the exercise of a portion of the State's sovereign power. The tribunal's members discharge no such function (see *Matter of Haller v Carlson,* 42 AD2d 829; 18 NY Jur 2d, Civil Servants and Other Public Officers and Employees, §§ 1-13, pp 536-556; cf. *Cain v Warner,* 45 App Div 450), nor are they persons charged with performing any

public duty. Rather, they are called to enforce the internal rules and regulations of Cortland. Their actions as tribunal members do not affect the public at large.

Finally, we find no merit in the contention that Cortland violated its own internal rules in any substantial way which would require a nullification of the disciplinary determination.

The judgment should be reversed, on the law, and the petition dismissed, without costs.

KANE, J. P., MAIN, WEISS and YESAWICH, JR., JJ., concur.

Judgment reversed, on the law, and petition dismissed, without costs.