In the Matter of BRADLEY RICHIE, Respondent, v THOMAS A. COUGHLIN, III, Individually and as Commissioner of the Department of Correctional Services, et al., Appellants.

Third Department, July 20, 1989

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Michael S. Buskus* of counsel), for appellants.

*Richard E. Casagrande* for respondent.

## OPINION OF THE COURT

Yesawich, Jr., J.

Shortly after being honorably discharged in 1970 from the United States Marine Corps following two tours of duty in Vietnam, petitioner was convicted of possession of less than one gram of marihuana and hashish in North Carolina. Petitioner was sentenced to 18 months' incarceration for the crime, classified then as a misdemeanor, but after serving four months he escaped and remained a fugitive for almost 15 years.

In 1981, petitioner filled out an employment application with respondent Department of Correctional Services (hereinafter DOCS), including the question, "Have you ever been convicted of any crime (felony or misdemeanor)?", which he answered, under penalty of perjury, "No." He was hired as a temporary release interviewer in January 1983 and subse-

quently received a permanent appointment. In June 1985, petitioner was arrested for driving while intoxicated in New Hampshire, where a computer check revealed an outstanding warrant stemming from his 1971 escape. He agreed to be returned to North Carolina where the escape charge was dismissed. On August 6, 1985, he was paroled on the drug charge and his parole was immediately terminated.

In the meantime, DOCS asked respondent Department of Civil Service (hereinafter the Department) to revoke petitioner's appointment based on his false statement regarding criminal convictions in his application. This request incorrectly stated that petitioner's conviction had been for a felony narcotics possession and alleged that petitioner avoided detection by changing his name, birth date and Social Security number, charges that have not been proven. On July 8, 1985, the Department mailed a notice of possible disqualification to petitioner, at an address that was outdated for over a year, despite the fact that DOCS had petitioner's correct address and knew he was then incarcerated in North Carolina; the notice was returned by the post office with a notation that the forwarding order had expired. On July 22, 1985, the Department sent a letter, again to the out-of-date address, informing petitioner that his appointment had been revoked because he had made a false statement of material fact and had practiced fraud in completing his application, citing the allegations reported by DOCS; this letter was likewise returned undelivered.

The Department, apparently prompted by an interoffice memorandum critical of the handling of petitioner's case, then wrote to petitioner at his correct address, stating that although the revocation decision had already been made he would be afforded another opportunity to submit facts and explanations in opposition to the determination. He was also informed that should the Department adhere to its determination, petitioner would have 30 days in which to appeal to respondent Civil Service Commission (hereinafter the Commission). Petitioner responded that he was entitled to a hearing prior to termination by virtue of the requirements of due process and an applicable collective bargaining agreement, and asserted that at such a hearing he would contradict the allegation that he changed his identity, show that the crime of which he was convicted would be a mere violation now and present evidence militating against his dismissal; he demanded that he be reinstated retroactively with full back pay.

In response, the Department advised that petitioner had no right to a hearing either under the provisions of the bargaining agreement or Civil Service Law § 50 (4) and that petitioner's letter was being treated as a timely notice of his intent to appeal.

Prior to the appeal, the Department staff furnished the Commission with a comprehensive background memorandum which petitioner did not see. Although there is no stenographic record of the appeal proceeding, it appears that during that proceeding the Commission, in addition to considering written material, heard presentations from representatives of petitioner, the Department and DOCS. On January 14, 1986, the Commission determined that petitioner should be terminated effective January 16, 1986 because of the false answer he gave on his employment application and awarded back pay for the period from the day he reported to work following his return from North Carolina to his new termination date.

Petitioner brought this action and proceeding claiming, *inter alia,* that he had been denied constitutionally guaranteed due process, that his termination was arbitrary, and that the Commission failed to comply with State Administrative Procedure Act article 3. Supreme Court, reacting to petitioner's motion and respondents' cross motion for summary judgment, held that the mailing of notices to an outdated address, the absence of safeguards against misstatements, the lack of specificity of the charges and the failure to consider the "decriminalization" of petitioner's conviction constituted a denial of minimal due process, and ordered petitioner's reinstatement pending proper proceedings under the Civil Service Law. Respondents appeal.

Reduced to its essentials, respondents' principal argument is that it is settled law in New York that if a civil servant, even one with permanent status, makes a material misstatement on his employment application, his appointment is void *ab initio,* that he has no property interest in his employment protectible by due process and that *Cleveland Bd. of Educ. v Loudermill* (470 US 532) has not changed that law. Respondents maintain that unlike the employee in *Cleveland Bd. of Educ. v Loudermill (supra),* a case otherwise very similar to the one at hand, petitioner had no property interest in his position since Civil Service Law § 50 (4) permits the Department to revoke the appointment of an employee, within three years of appointment, upon the discovery of facts which if known prior to appointment would have warranted disqualifi-

cation, including that he made a false statement of a material fact on his application[1] (Civil Service Law § 50 [4] [f]; *see, Prasad v Merges,* 65 AD2d 663, *appeal dismissed* 46 NY2d 939, *cert denied* 444 US 861). Respondents reason that because petitioner could be terminated within three years of appointment upon discovery of the misrepresentation (Civil Service Law § 50 [4]), he had no legitimate expectation of a benefit or privilege *(see, Matter of Doe v Coughlin,* 71 NY2d 48, 55, *cert denied* — US —, 109 S Ct 196).

■ Certainly that would be true if the Department were *required* to terminate such an employee, for his appointment would indeed then be void *ab initio.* However, since property rights "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law" *(Board of Regents v Roth,* 408 US 564, 577), careful attention must be paid to the language of this statute which purportedly destroys the property interest recognized in *Loudermill (supra).*[2] Civil Service Law § 50 (4) clearly makes the decision to revoke an appointment for any of the enumerated disqualifications *discretionary.* The statute does not render an appointment void *ab initio* upon discovery of, for instance, a false statement or even a criminal conviction, but rather affords the employee the opportunity to offer facts and explanations in opposition to termination. In making this discretionary determination the Department and the Commission are obligated not to do so arbitrarily or illegally or without having a foundation in substantial evidence *(see,* CPLR 7803 [3], [4]). In fact, in arriving at the decision here, which is based exclusively on the authority of Civil Service Law § 50 (4) (i.e., not charges of misconduct or incompetence), the Department and subsequently the Commission recognized this for they considered a variety of aggravating and mitigating factors which they believed bore on how their discretion should be exercised. That is as it should be, for in exercising that discretion respondents must act with scrupulous care, and not to do so would be profoundly inappropriate conduct and would reduce the employee's right to have respondents

---

1. Although Ohio has a law analogous to Civil Service Law § 50 (4) (f) (Ohio Rev Code Annot § 124.25), its impact on the employee's property interest in his job was not discussed in *Cleveland Bd. of Educ. v Loudermill* (470 US 532).

2. The property interest recognized there is created by Ohio's analogue to Civil Service Law § 75, which provides that a permanent employee may not be removed except for incompetence or misconduct.

act rationally and objectively to an empty ritual. Accordingly, we conclude that an employee in petitioner's position has a constitutionally protected property interest in his employment that survives Civil Service Law § 50 (4), albeit in a limited form,[3] in that he is entitled to expect that where there are sufficient mitigating circumstances he will not be terminated. Hence, a meaningful opportunity to invoke the discretion of the decision maker is a precondition to his termination *(see, Cleveland Bd. of Educ. v Loudermill,* 470 US 532, 543, *supra).*

■ The next question is whether the procedures in Civil Service Law § 50 (4) provide due process appropriate to the property interest just identified. The scope of the process due depends upon the nature of the interest involved and need not be elaborate *(see, supra,* at 545). At a minimum, petitioner is entitled to a pretermination opportunity to respond, coupled with posttermination administrative review *(see, supra,* at 547). We are satisfied that the pretermination notice and opportunity to respond in writing with facts and explanations, the procedure provided for in Civil Service Law § 50 (4), coupled with posttermination administrative review meets that minimum with respect to the limited property interest involved here.

Petitioner initially was undeniably deprived of the statutory pretermination notice and of an opportunity to respond. In apparent recognition of that fact, the Commission awarded petitioner back pay running up to the effective date of its decision to terminate him. In essence, petitioner's earlier termination was transformed into a suspension with pay *(see, Cleveland Bd. of Educ. v Loudermill, supra,* at 545). Since petitioner's effective termination did not come about until after his hearing before the Commission, of which he was given prior notice and at which he had an opportunity to respond, he was not deprived of his constitutional right to due process; reinstatement and a further hearing would therefore be redundant.

■ As for petitioner's contention that his hearing before the Commission should have been conducted in accordance with State Administrative Procedure Act article 3, which governs adjudicatory proceedings, we note that since petitioner did not cross-appeal from Supreme Court's failure to grant the requested relief our right to entertain this argument is, at best,

---

3. To the extent *Prasad v Merges* (65 AD2d 663) holds to the contrary, we find it overruled by *Cleveland Bd. of Educ. v Loudermill* (470 US 532).

dubious (1 Newman, New York Appellate Practice §§ 3.03, 5.08, at 3-5, 5-28). But even if the issue is properly before us, it is without merit inasmuch as the administrative appeal proceeding had herein was not required by law to be made on the record *(see,* State Administrative Procedure Act § 102 [3]; *Matter of Mary M. v Clark,* 100 AD2d 41, 43).

KANE, J. P., CASEY, MIKOLL and MERCURE, JJ., concur.

Judgment reversed, on the law, without costs, cross motion for summary judgment granted, complaint dismissed and it is declared that petitioner's constitutional rights have not been shown to be violated.