Mercure, J.P.
Proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, entered in St. Lawrence County) to review a determination of respondent President of the State University of New York at Potsdam which, among other things, placed petitioner on disciplinary suspension.
In November 2011, petitioner was a first semester freshman at respondent State University of New York at Potsdam (hereinafter SUNY), majoring in music performance. While walking one night in the basement hallway of a campus dormitory, petitioner encountered a female student, who was walking behind him. According to petitioner, he was carrying and clicking a pen, which is a nervous habit of his. Petitioner stated that the other student was startled by his presence and the fact that he had looked back at her a few times. The other student alleged that petitioner was flicking a knife, and that when he turned around to “smirk[ ]” at her and refused to answer when she spoke to him, she became alarmed and left the area.
A few hours after the incident, petitioner learned that SUNY had issued a safety warning about a suspicious male, possibly carrying a knife, in the same basement. Petitioner then voluntarily turned himself in to campus police and gave a statement explaining what had transpired. Petitioner also admitted that he was, in fact, carrying a three-inch knife in his pocket at the time of the incident, and gave both a pen and the knife to the interviewing officer. The police declined to press charges and released petitioner to respondent William Morris, the Dean of Students, at approximately 1:00 a.m. Morris informed petitioner that he was immediately suspended and not allowed to remain on campus, and assisted petitioner in arranging accommodations with friends in an off-campus location.
Later that morning, the Coordinator of Student Conduct and *1118 Community Standards sent petitioner a letter scheduling a meeting with Morris that day, and indicating that he could be charged with two violations of SUNY’s Code of Student Rights, Responsibilities and Conduct (hereinafter the Code). The potential charges were “[e]ngaging in a course of conduct or repeatedly committing acts which alarm another person or threaten their well being,” and “[i]ndividual behavior which adversely affects the quality of life on campus or unduly disturbs one or more members of the College community.” The letter, which petitioner signed, informed him of his right to resolve the disciplinary charges through an administrative agreement in lieu of a hearing and the address for the website on which the disciplinary procedures in the Code could be found. Enclosed with the letter were copies of the statements made by petitioner and the other student to police, as well as a summary of the procedural rights of students, including the right to present witnesses and to the assistance of legal counsel or an advisor.
Petitioner agreed in writing to a hearing as soon as possible, and received a second letter the same day scheduling the hearing, notifying him that he had been charged as set forth above, and reiterating that he had the right to present evidence and witnesses, challenge the evidence against him and to appear with an advisor of his choice. Following the hearing, petitioner was found “responsible” for the charges, suspended for the remainder of the academic year and permanently barred from living on campus. Upon his appeal, the suspension was reduced to the remainder of the fall semester. This proceeding ensued.
Initially, we reject petitioner’s argument that respondents failed to substantially comply with the rules and guidelines for disciplinary proceedings published in the Code. “It is well established that once having adopted rules or guidelines establishing the procedures to be followed in relation to suspension or expulsion of a student, colleges or universities—both public and private—must substantially comply with those rules and guidelines” (Matter of Weidemann v State Univ. of N.Y. Coll, at Cortland, 188 AD2d 974, 975 [1992] [citations omitted]; see Tedeschi v Wagner Coll., 49 NY2d 652, 660 [1980]). Here, petitioner challenges his immediate suspension and removal from the campus by Morris at 1:00 a.m.—and prior to commencement of disciplinary proceedings—as violating article IX (1) (h) of the Code, which provides that “[u]pon the service of notice of charges, the Director of Student Conduct and Community Standards may suspend a student for an interim period pending disciplinary proceedings” (emphasis added). We note, however, that although petitioner was not served with the no *1119 tice of charges at the time that he was removed from the campus, the Coordinator of Student Conduct and Community Standards promptly contacted petitioner regarding the incident and served the charges later the same morning. In light of the timing of petitioner’s release by the police and the exigent circumstances requiring immediate action to preserve campus safety, respondents substantially complied with the rule regarding service of the notice of the charges and the imposition of an interim suspension (see Matter of Krysty v State Univ. of N.Y. at Buffalo, 39 AD3d 1220, 1220 [2007], lv denied 9 NY3d 805 [2007]; Matter of Nawaz v State Univ. of N.Y. Univ. at Buffalo School of Dental Medicine, 295 AD2d 944, 944-945 [2002]).
Similarly, while petitioner argues that he was not informed of his right under the Code to discuss the circumstances underlying his interim suspension with the Vice President of Student Affairs, he was provided with an opportunity to discuss those circumstances with Morris on the day after the incident occurred. Moreover, petitioner was given information regarding online access to the Code, which indicates that the right to meet with the Vice President is available upon request. Inasmuch as petitioner did not request a meeting, respondents did not violate this provision of the Code.
Next, petitioner’s contention that he was not afforded the opportunity for an administrative agreement in waiver of a hearing is contradicted by his signature and request for a formal hearing, which he wrote on the letter informing him of the option for such an administrative agreement. Nor does the record support petitioner’s assertions that respondent John Schwaller, President of SUNY, did not “impose” the sanctions, or that he was denied his rights to have an advisor or question the victim. Moreover, in our view, respondents rationally interpreted the Code in determining that it did not provide the right to call character witnesses who did not witness the incident, require SUNY to inform petitioner of the collateral consequences of suspension, or preclude SUNY from denying petitioner credit for the semester in light of the suspension (see Matter of Hyman v Cornell Univ., 82 AD3d 1309, 1310 [2011]).
Petitioner’s remaining arguments do not require extended discussion. Petitioner’s due process rights were not violated inasmuch as he was given written notice of the charges prior to the hearing, the name of the witness against him, the opportunity to present a defense and have the assistance of an advisor at the hearing, and a statement detailing the factual findings, evidence relied upon and discipline imposed (see Matter of Gruen v Chase, 215 AD2d 481, 481 [1995]; Matter of Rauer *1120 v State Univ. of N.Y., Univ. at Albany, 159 AD2d 835, 836 [1990]; Matter of Mary M. v Clark, 100 AD2d 41, 43-44 [1984]; cf. Matter of Kalinsky v State Univ. of N.Y. at Binghamton, 161 AD2d 1006, 1007 [1990]). Finally, the determination is supported by substantial evidence in the form of the victim’s statement to police and her testimony at the hearing (see Matter of Abrahamian v City Univ. of N.Y., 170 AD2d 233, 233-234 [1991]; see also Matter of Willett v City Univ. of N.Y. [CUNY] Law School, 231 AD2d 642, 643 [1996], lv denied 90 NY2d 801 [1997]).*
Rose, McCarthy and Garry, JJ., concur.
Adjudged that the determination is confirmed, without costs, and petition dismissed.

 Because SUNY is a public university, the determination was made after a hearing required by law (see e.g. Matter of Nawaz v State Univ. of N.Y. Univ. at Buffalo School of Dental Medicine, 295 AD2d at 944; Matter of Gruen v Chase, 215 AD2d at 481). Thus, substantial evidence is the proper standard of review (see CPLR 7803 [4]; Matter of Pell v Board of Educ. of Union Free School Dist. No. 1 of Towns of Scarsdale & Mamaroneck, Westchester County, 34 NY2d 222, 230-231 [1974]).