Matter of Bursch v Purchase Coll. of the State Univ. of N.Y. (2018 NY Slip Op 06090)





Matter of Bursch v Purchase Coll. of the State Univ. of N.Y.


2018 NY Slip Op 06090


Decided on September 19, 2018


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on September 19, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
JEFFREY A. COHEN
ROBERT J. MILLER
VALERIE BRATHWAITE NELSON
ANGELA G. IANNACCI, JJ.


2016-03913
 (Index No. 1319/15)

[*1]In the Matter of Jamael Bursch, petitioner, 
v
Purchase College of the State University of New York, et al., respondents.


Brill Legal Group, P.C., Hempstead, NY (Peter E. Brill of counsel), for petitioner.
Barbara D. Underwood, Attorney General, New York, NY (Anisha S. Dasgupta and Seth M. Rokosky of counsel), for respondents.



DECISION & JUDGMENT
Proceeding pursuant to CPLR article 78, inter alia, to review a determination of the respondent Purchase College of the State University of New York, dated October 17, 2014. The determination upheld a decision of the Disciplinary Hearing Committee of the respondent Purchase College of the State University of New York dated October 7, 2014, finding that the petitioner committed disciplinary violations, and expelled the petitioner from the school.
ADJUDGED that the determination is confirmed, the petition is denied, and the proceeding is dismissed on the merits, with costs.
On September 24, 2014, the petitioner, a student at Purchase College of the State University of New York (hereinafter Purchase), was charged with committing four violations of the student code of conduct: (1) engaging or attempting to engage in unwanted sexual behavior toward any individual; (2) engaging or attempting to engage in anal, oral, or vaginal penetration with an individual without the consent of that person; (3) engaging or attempting to engage in sexual intercourse or other sexual behavior with someone who is physically helpless (e.g., drunk and/or under the influence of a substance or substances rendering him or her helpless), unconscious, or otherwise incapacitated or unable to accurately communicate; and (4) underage consumption of alcohol. The next day, the petitioner met with Melissa Jones, Purchase's Director for Community Standards, for an initial conference regarding the charges. At that conference, the petitioner admitted that he was responsible for underage consumption of alcohol, but denied that he was responsible for the other charges. The petitioner elected to have the charges pending against him resolved at a hearing before an administrative hearing board comprised of three faculty and/or professional staff, instead of a hearing board comprised of students and faculty or staff members. The petitioner also received a notice informing him that he was entitled to have an "advisor" of his choice present at the hearing, and that this advisor could be a parent or attorney. The notice further indicated that if an attorney was present, the attorney could not "represent the student and/or interact with the Hearing Committee/Officer or any other individual in the hearing process with the exception of his/her client."
In an email sent to the petitioner on Tuesday, September 30, 2014, Jones stated that [*2]she was "currently having an issue with finding a time for your hearing this week due to witness availability and the Jewish holiday." Jones further stated in the email that she was "currently looking to schedule your hearing for Monday, October 6, 2014 or Tuesday, October 7, 2014." In an email sent to Jones later in the day on September 30, 2014, an attorney stated that he had been retained by the petitioner to represent him with respect to the charges, and requested that Jones forward any future correspondence related to the upcoming hearing to the attorney's attention. Still later in the day on September 30, 2014, Jones sent an email to the petitioner noting that she had received the attorney's email, but that she was not able to communicate directly with the attorney until the petitioner completed an attached release form pursuant to the Family Educational Rights and Privacy Act of 1974 (hereinafter FERPA; see 20 USC § 1232g). Jones stated in the email that until the petitioner completed the FERPA release form, "any direct communication will go through [sic] such as date of hearing, hearing updates, etc. and then you can forward the communication to your attorney prior to providing a reply."
In a letter that was emailed to the petitioner on Thursday, October 2, 2014, Jones informed the petitioner that his hearing was scheduled for 9:00 a.m. on Tuesday, October 7, 2014. Later that day, and again the next day, representatives of Purchase sent emails to the petitioner saying that they had received calls from the petitioner's attorney, but that they were unable to discuss with the attorney any information regarding the petitioner's case until Purchase received a completed FERPA release form.
On October 5, 2014, the petitioner completed a FERPA release form. According to the petition in this CPLR article 78 proceeding, "[o]n or about October 5, 2014," the petitioner's attorney informed a representative of Purchase that he had an unspecified prior commitment at 9:00 a.m. on October 7 that he could not change, and asked for the hearing to be delayed until approximately 12:00 p.m. that day. According to the petition, this request was denied without explanation. On October 6, 2014, Jones emailed the petitioner to inform him of the "witnesses, character witnesses, and reports to be presented in the hearing schedule[d] for tomorrow . . . at 9:00 a.m." Jones further wrote in the email: "As a reminder, your request for the hearing to be postponed until 12 noon has been denied due to the availability of the people involved in the hearing."
The hearing took place between 9:42 a.m. and 11:35 a.m. on October 7, 2014. The petitioner's attorney was not present; instead, the petitioner's father was present as his advisor. At the hearing, the complainant testified that on the night of the incident, she had blacked out from intoxication for the first time in her life, remembering nothing about the incident except vomiting in someone's bathroom at some point in the evening. She further testified that she had barely known the petitioner before the night of the incident, that she had been in a two-year relationship with another woman, and that she was shocked to discover her disordered clothing and signs of sexual activity when she awoke the next morning. Text messages exchanged by the complainant and the petitioner the day after the incident were introduced. In these messages, the complainant asked the petitioner what had happened the night before, stating that she had been "incoherent" that night. The petitioner responded that they had sex, and that "I was also incoherent but not as much as you." At the hearing, the petitioner admitted that he had engaged in sexual intercourse with the complainant, that the complainant did not verbally consent to sexual intercourse, that it was "obvious" that she was drunk, and that the complainant "freaked out" or "bugged out" when she realized the next morning that her underwear was not on.
In a determination dated October 7, 2014, the hearing board found that the petitioner committed the charged violations, and recommended that the petitioner be expelled from the college. With respect to each of the first three violations, the board determined that the complainant was intoxicated to the point of being unable to consent to any sexual act. The board then specifically noted the petitioner's text message stating that he was "also incoherent but not as much as you," and the petitioner's testimony that the complainant did not give any verbal consent. The petitioner appealed the hearing board's determination to the campus appeal board. In a determination dated October 15, 2014, the campus appeal board recommended that the appeal be denied. In a letter to the petitioner dated October 17, 2014, Purchase's Vice President of Student Affairs informed the petitioner that he and the president of Purchase had approved the recommendation of the campus [*3]appeal board, and that the petitioner was thereby expelled. The petitioner subsequently commenced this proceeding pursuant to CPLR article 78 to review Purchase's determination. In an order entered July 7, 2015, the Supreme Court, Westchester County, transferred the proceeding to this Court pursuant to CPLR 7804(g).
Contrary to the petitioner's contention and the conclusion of our dissenting colleagues, we find that Purchase did not abuse its discretion or act arbitrarily or capriciously in denying the petitioner's request to adjourn the hearing (see CPLR 7803[3]).
While our dissenting colleagues rely on a provision of Purchase's Sexual and Interpersonal Violence Policy that gives an accused student the right to request a "one-time extension" of a disciplinary hearing, this provision is neither cited by the parties nor contained in the record. In any event, this provision merely states that an accused student has the right to "request" an extension of up to five business days, and further provides that the Director of the Office of Community Standards "will review the request and make a determination" before notifying the requesting party as to "the acceptance or denial of the request" (Purchase Coll., Off. of Community Standards, Sexual and Interpersonal Violence, Sexual Violence Hearing/Discipline Preparation & Rights, available at https://www.purchase.edu/offices/community-standards/sexual-and-interpersonal-violence/hearing/ [last accessed June 28, 2018]).
Here, although the petitioner was informed on September 30, 2014, that the hearing would likely be scheduled for October 6 or 7, and although he was informed on October 2, 2014, of the exact time of the hearing, he alleges that he did not request an adjournment until "on or about" October 5, 2014, which was two days before the date of the hearing. Any delay in the petitioner's attorney discussing the scheduling of the hearing with the Purchase administration was attributable to the petitioner's delay in executing a FERPA release form as instructed. The hearing involved the participation of three faculty or staff members serving as the administrative board, eight testifying witnesses including the petitioner and the complainant, and a support person for the complainant. Jones had previously mentioned in an email to the petitioner the difficulty that she was having finding a time when all of these people could participate. Given the difficulty in scheduling and the timing of the request for an adjournment, the denial of the request was not arbitrary, capricious, or an abuse of discretion (see Matter of Gerber v New York State Dept. of Motor Vehs., 129 AD3d 959, 960; Matter of Fain v Brooklyn Coll. of City Univ. of N.Y., 112 AD2d 992, 993).
Nor did the denial of the request for an adjournment amount to a denial of due process. In disciplinary proceedings at public colleges, " [d]ue process requires that the [accused students] be given the names of the witnesses against them, the opportunity to present a defense, and the results and finding of the hearing'" (Matter of Lambraia v State Univ. of N.Y. at Binghamton, 135 AD3d 1144, 1146, quoting Matter of Gruen v Chase, 215 AD2d 481, 481). Due process does not require colleges to provide accused students with legal representation at disciplinary hearings (see Matter of Gruen v Chase, 215 AD2d at 481; Matter of Mary M. v Clark, 100 AD2d 41, 44). Purchase's rules, the legality of which the petitioner does not challenge, allow for an attorney to be present and advise an accused student at a disciplinary hearing, but not to represent the student or interact with anyone at the hearing other than the accused student. Here, the petitioner had hired an attorney as of September 30, 2014. As noted above, the petitioner was notified on September 30, 2014, that the hearing would likely be scheduled for October 6 or 7, and was informed of the exact time of the hearing on October 2, 2014. He alleges that he did not request an adjournment until "on or about" October 5, 2014, which was two days before the date of the hearing. Under these circumstances, contrary to the suggestion of our dissenting colleagues, the petitioner was not denied the opportunity to have an attorney present at the hearing (see Matter of A & U Auto Repair v New York State Dept. of Motor Vehs., 135 AD3d 856, 857; Matter of Watson v Fiala, 101 AD3d 1649, 1650-1651; Matter of Gell v Carrion, 81 AD3d 953, 953-954; Matter of Baywood Elec. Corp. v New York State Dept. of Labor, 232 AD2d 553, 554; Matter of Gruen v Chase, 215 AD2d at 481; Matter of Mera v Tax Appeals Trib. of State of N.Y., 204 AD2d 818, 820; Matter of Rauer v State Univ. of N.Y., Univ. at Albany, 159 AD2d 835, 836; Patricia W. Walston, P. C. v Axelrod, 103 AD2d 769, 770-771).
Purchase's determination that the petitioner committed the charged violations was supported by substantial evidence (see CPLR 7803[4]; Matter of Bottom v Annucci, 26 NY3d 983, 984-985; 300 Gramatan Ave. Assoc. v State Div. of Human Rights, 45 NY2d 176, 180-181; cf. Matter of Fain v Brooklyn Coll. of City Univ. of N.Y., 112 AD2d at 994).
Contrary to the petitioner's contention, the penalty of expulsion was not so disproportionate to the offenses as to be shocking to one's sense of fairness, thus constituting an abuse of discretion as a matter of law (see CPLR 7803[3]; Matter of Powers v St. John's Univ. Sch. of Law, 25 NY3d 210, 218; Matter of Kelly v Safir, 96 NY2d 32, 38).
The petitioner's remaining contentions are not properly before this Court (see Matter of Corrigan v New York State Off. of Children & Family Servs., 28 NY3d 636, 643).
MASTRO, J.P., BRATHWAITE NELSON and IANNACCI, JJ., concur.
MILLER , J. dissents, and votes to grant the petition, annul the administrative determination, and remit the matter for a new hearing in accordance herewith, with the following memorandum, in which COHEN, J., concurs:
The respondent Purchase College of the State University of New York (hereinafter Purchase) violated the petitioner's right to due process and abused its discretion when it denied his timely request for a three-hour adjournment of the administrative hearing so that his attorney could attend. Given the gravity of the administrative charges facing the petitioner, and the threat of additional criminal charges stemming from an active police investigation, the petitioner's right to secure the assistance of his designated attorney at the administrative hearing was fundamental. This right was wrongfully extinguished by Purchase when it summarily refused to accommodate the petitioner's request for this exceedingly minimal delay.
This case should not be analyzed as if it involved a routine application for an adjournment in a proceeding before the Department of Motor Vehicles. Aside from the punishment of expulsion, which effectively ended the petitioner's pursuit of higher education, the petitioner faced the prospect of serious criminal charges that could have resulted in a significant prison sentence. In light of the potential impact of the administrative hearing, the failure to grant a three-hour adjournment was no ordinary administrative determination with consequences confined to the administrative realm, but a decision which deprived the petitioner of his right to due process. Every participant in an administrative proceeding is entitled to be treated fairly and in accordance with due process, regardless of the nature of the charges lodged against them. Accordingly, we must respectfully dissent.
On September 22, 2014, the complainant reported to New York State University Police that she had been sexually assaulted by the petitioner a few days earlier. The petitioner made himself available to the police, and was interviewed by police investigators for more than seven hours. When the petitioner asked to go home, he was detained by the police until he was notified by Purchase that he was suspended.
On September 24, 2014, Purchase charged the petitioner with four violations of the University Standards of Conduct: one instance of underage drinking and three instances of sexual assault. The petitioner faced the maximum administrative punishment of expulsion.
The petitioner's father contacted Purchase on the day that the petitioner was charged. He was informed by Melissa Jones, the Director for Community Standards, that she was unable to provide specific information about the charges since the school had not yet obtained a Family Education Rights and Privacy Act of 1974 (hereinafter FERPA; see 20 USC § 1232g) release form from the petitioner. Jones did, however, inform the petitioner's father that the petitioner had been suspended pending the outcome of a disciplinary process due to allegations of sexual assault. Jones also discussed the nature of the disciplinary hearing with the father, the time frames that would be [*4]involved, and other administrative matters relating to the charges.
The next day, the petitioner met with Jones and admitted responsibility for the charge of underage drinking, but requested an administrative hearing with respect to all other allegations. At this meeting, Jones explained, among other things, that the petitioner's administrative hearing would be conducted before three members of the faculty and/or professional staff. Jones informed the petitioner that, as per Purchase's written policy, the petitioner had "the right" to have an "advisor of [his] choice" present, which could be an attorney or parent. If "legal action surrounding the same incident [was] pending," the petitioner had "the right to . . . [t]he presence of an attorney." If the petitioner chose an attorney to attend the hearing, the attorney would be permitted to interact only with the petitioner. Jones explained that both the petitioner and the complainant were entitled to call fact witnesses and character witnesses to testify at the hearing. Witnesses who could not appear in person were permitted to provide written statements or testify by telephone. The petitioner and the complainant were also entitled to formal notice of the date and time of his hearing no less than two days in advance of the hearing. The petitioner and the complainant were required to email any written witness statements and a list of testifying witnesses to Purchase 24 hours prior to the hearing.
Purchase's Sexual and Interpersonal Violence Policy, which is relied upon by Purchase in its brief, was to resolve the complaints of sexual misconduct "within 60 calendar days" of receipt of the complaint (Purchase Coll., Off. of Community Standards, Sexual and Interpersonal Violence, available at https://www.purchase.edu/offices/community-standards/sexual-and-interpersonal-violence/ [last accessed June 28, 2018]). That policy also gave accused students "[t]he right to request a one-time extension of a disciplinary hearing that cannot exceed 5 business days" (id.).
On Tuesday, September 30, 2014, at 8:56 a.m., Jones emailed the petitioner stating that her office was "currently having an issue with finding a time for your hearing this week due to witness availability and the Jewish holiday." Within 20 minutes of that email, the petitioner's attorney notified Purchase that he had been retained to advise the petitioner in these proceedings. At 11:25 a.m. that day, Jones notified the complainant that the petitioner had selected an attorney as "his advisor of choice" for the hearing and informed the complainant that she "also [had] the right to bring an attorney as an advisor of choice."
By an email sent on Thursday, October 2, 2014, at 2:13 p.m., the petitioner was notified of the time of his hearing. The hearing was scheduled for October 7, 2014, at 9:00 a.m., a little more than two business days after the scheduling email was sent. The record reflects that less than four hours after the petitioner was notified of the date and time of the hearing, the petitioner's attorney telephoned Purchase. Jones refused to speak to the petitioner's attorney unless the petitioner signed and transmitted a FERPA release form that specifically pertained to the attorney. The petitioner's attorney telephoned Purchase College again the next day before 12:25 p.m., but the Office of Community Standards again refused to speak with him, even in non-specific terms.
The petitioner provided the requested FERPA release form on Sunday, October 5, 2014. After the form was sent, the petitioner's attorney again contacted Purchase and requested that the start of the hearing be delayed by three hours, so that it would begin at noon. The petitioner alleged that although his attorney informed Purchase that he had a scheduling commitment that he could not change, his request for a three-hour delay was denied without explanation.
On Monday, October 6, 2014, at 3:49 p.m., Jones sent the petitioner a list of witnesses, character witnesses, and reports that would be presented at the scheduled hearing. Jones' email indicated that the petitioner had not selected an advisor, although his attorney was copied on the email. This email acknowledged that the petitioner had previously requested a three-hour adjournment and sought to provide a reason for Purchase's denial, stating "[a]s a reminder, [the] request for the hearing to be postponed until 12 noon has been denied due to the availability of the people involved in the hearing." The record contains no further explanation for the decision to deny the petitioner's request for a three-hour delay.
Prior to the hearing, which occurred the next day, the petitioner's attorney emailed Jones and requested access to any surveillance video footage from the night in question. Jones replied that her office was "unaware of any surveillance material." This representation conflicted with a previous email Jones sent to the complainant on October 2, 2014, with the subject line "Video Follow Up." In that email, Jones referenced an earlier conversation with the complainant and reiterated that if the complainant wanted to "submit the video" at the hearing, Jones would "need to provide a copy to [the petitioner]."
The hearing was held on October 7, 2014. All of the character witnesses selected by the complainant appeared at the hearing in person. The three fact witnesses designated by the petitioner all had class at the time of the hearing and were therefore compelled to provide written statements. The petitioner's attorney was unable to attend the hearing, and the petitioner appeared without an attorney as his advisor of choice.
During the hearing, the complainant testified that she had consumed a quantity of vodka in her apartment on the night in question, and that she "blacked out" for the entire night. She did not remember even leaving her apartment. The complainant specifically referenced the surveillance video in question and represented to the administrative hearing officers that its contents corroborated her testimony that she was, in effect, incapacitated and constituted "proof" of her case. The petitioner did not object to this testimony. When the petitioner requested access to the video so that he could view its contents, one of the administrative hearing officers, Anthony Ware, responded that the petitioner would need to contact the District Attorney to view the video and stated "[t]hat obviously doesn't have anything to do with these proceedings here."
The petitioner testified that he too had been drinking on the night in question and he could not remember everything that happened. He testified that he met the complainant at a party that was held at a student center on campus. At some point while he was dancing at the student center, the complainant came up behind him and embraced him while he danced. The two danced together and eventually kissed. They left the student center together and walked back to the petitioner's apartment. The two talked and interacted during this period. Once at the apartment, the complainant jumped onto the petitioner's bed. She opened her arms and told the petitioner to come into bed with her. The petitioner got into bed with the complainant and the two began kissing. The petitioner testified that the complainant then initiated additional sexual acts by, among other things, taking off the petitioner's belt and getting on top of him. The petitioner testified that although he knew that the complainant had been drinking, he believed that her conduct indicated that she understood what was going on. At no time did she appear to doze off or slump over. The petitioner testified that the complainant actively participated in the sexual encounter and even escalated it.
The petitioner further testified at the hearing that he had been approached by one of the police investigators prior to the hearing and was given "advice" about arguments to make during the hearing. The hearing also revealed, through the testimony of one of the police investigators, that a criminal investigation was "ongoing" and that the police department was still in the "fact finding" stage.
After the completion of the hearing, Purchase issued its disciplinary hearing findings. These findings were transmitted to the petitioner in an email dated October 7, 2014, at 2:16 p.m.—a little less than five hours after the start of the hearing. The petitioner was found to be responsible for all of the disciplinary charges. Although Purchase found the petitioner's testimony to be credible, the administrative determination stated that the complainant was incapable of giving valid consent due to her level of intoxication. In support of its findings on the three counts of sexual abuse, Purchase merely cited the fact that the petitioner had testified that the complainant did not give him verbal consent. There is no indication that Purchase ever considered the petitioner's actual defense: that the complainant had repeatedly given non-verbal consent to the sexual encounter by her actions, which were specifically described by the petitioner in his testimony. The petitioner was permanently expelled from Purchase and directed to vacate campus within three days, after which time he would be subject to criminal arrest.
The petitioner thereafter commenced this proceeding pursuant to CPLR article 78 to challenge Purchase's determination. The petitioner contends, among other things, that Purchase's summary denial of his request for a three-hour adjournment so that his attorney could attend the hearing as his chosen advisor constituted an abuse of discretion and violated his right to due process of law.
"[C]olleges and universities are accountable in a CPLR article 78 proceeding, with its well-defined standards of judicial review, for the proper discharge of their self-imposed as well as statutory obligations" (Gertler v Goodgold, 107 AD2d 481, 486; see Education Law § 214; see also Maas v Cornell Univ., 94 NY2d 87, 92). Accordingly, a proceeding pursuant to CPLR article 78 may be commenced to review whether an administrative determination reached by a college or university "was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed" (CPLR 7803[3]; see Maas v Cornell Univ., 94 NY2d at 92).
As the Court of Appeals has recognized, "because matters involving academic standards generally rest upon the subjective judgment of professional educators, courts are reluctant to impose the strictures of traditional legal rules" (Tedeschi v Wagner Coll., 49 NY2d 652, 658). "Though such matters are subject to judicial scrutiny, the issue reviewed in such a case is whether the institution has acted in good faith or its action was arbitrary or irrational" (id. at 658). "Suspension or expulsion for causes unrelated to academic achievement, however, involve determinations quite closely akin to the day-to-day work of the judiciary" (id.). "Recognizing the present day importance of higher education to many, if not most, employment opportunities, the courts have, therefore, looked more closely at the actions of educational institutions in such matters" (id.).
"With certain narrow exceptions, the right to the effective assistance of counsel (US Const, 6th [Amend]; NY Const, art I, § 6) does not extend to civil actions or administrative proceedings" (Patricia W. Walston, P.C. v Axelrod, 103 AD2d 769, 770 [citations omitted]; see Matter of Estafanous v New York City Envtl. Control Bd., 136 AD3d 906, 907; Matter of Baywood Elec. Corp. v New York State Dept. of Labor, 232 AD2d 553, 554). Accordingly, as a general matter, due process does not require a college or university to provide accused students with legal representation at a disciplinary proceeding (see Matter of Gruen v Chase, 215 AD2d 481, 481; Matter of Mary M. v Clark, 100 AD2d 41, 44).
However, even where a party does not have a constitutional right to have an attorney provided to them, given "the severity of the charges and the potential for the drastic punishment" that may attend an administrative proceeding (Matter of Club 4223 v McLaughlin, 68 AD2d 888, 888), "[t]he right to have the assistance of counsel is a fundamental one" (Matter of Dennelly v County Attorney of Nassau County, 88 AD2d 912, 913). Accordingly, as this Court has consistently recognized, "[d]ue process considerations require . . . that a party to an administrative proceeding be afforded the opportunity to be represented by counsel" (Matter of Estafanous v New York City Envtl. Control Bd., 136 AD3d at 907; see Matter of Baywood Elec. Corp. v New York State Dept. of Labor, 232 AD2d at 554; Patricia W. Walston, P.C. v Axelrod, 103 AD2d at 770-771; see also Matter of Mera v Tax Appeals Trib., P.C. of State of N.Y., 204 AD2d 818, 820). Moreover, independent of this due process right, Purchase's own internal rules explicitly afford accused students the right to select an attorney to serve as his or her advisor of choice at a disciplinary hearings (cf. Patricia W. Walston, P.C. v Axelrod, 103 AD2d at 770-771). "[W]hen a university has adopted a rule or guideline establishing the procedure to be followed in relation to suspension or expulsion that procedure must be substantially observed" (Tedeschi v Wagner Coll., 49 NY2d at 660; see Matter of Gruen v Chase, 215 AD2d at 481-482).
Here, the petitioner was denied his right to have his attorney assist him at the disciplinary hearing because Purchase refused to delay the start of the hearing for a mere three hours. It is true that the granting of an adjournment is generally a matter resting within the sound discretion of the administrative body (see Matter of Gerber v New York State Dept. of Motor Vehs., 129 AD3d 959, 960; see generally Matter of Anthony M., 63 NY2d 270, 283). However, "[t]his discretion will [*5]be more narrowly construed where fundamental rights are at issue" (Matter of Housing Dev. Fund Co. of Carpenters & Joiners, Local 964, of Ramapo v County of Rockland, 134 AD2d 594, 594; see generally People v Spears, 64 NY2d 698, 699-700). Courts have consistently held that, unless the record establishes the existence of a legitimate countervailing reason, it is an abuse of discretion to deny a request for a short adjournment to permit an individual to secure the presence of an attorney (see Matter of Messina v Bellmore Fire Dist. Commn., Bd. of Fire Commrs., 242 AD2d 631, 633; Matter of Crimi v Droskoski, 217 AD2d 698, 699; Matter of Milrad [Levine], 44 AD2d 287, 289-290; see also Matter of Odom [Commissioner of Labor], 131 AD3d 1323, 1323; Matter of Dennelly v County Attorney of Nassau County, 88 AD2d at 913).
In this case, the petitioner was facing the most severe punishment that could be imposed on a student: permanent expulsion. In addition, the petitioner had already been interviewed by police investigators, the District Attorney had already begun collecting evidence, and it was clear that a parallel criminal investigation was ongoing. Under such circumstances, the petitioner's right to have an attorney assist him at the hearing was "a fundamental one" (Matter of Dennelly v County Attorney of Nassau County, 88 AD2d at 913; see Matter of Odom [Commissioner of Labor], 131 AD3d at 1323; Matter of Messina v Bellmore Fire Dist. Commn., Bd. of Fire Commrs., 242 AD2d at 633; Matter of Crimi v Droskoski, 217 AD2d at 699; Matter of Milrad [Levine], 44 AD2d at 289-290).
Purchase contends in its brief that it providently exercised its discretion when it denied the petitioner's "last-minute request to postpone the hearing." However, the petitioner's request was not untimely. Purchase's policy, which it cites to on this appeal, gave the petitioner "[t]he right to request a one-time extension of a disciplinary hearing that cannot exceed 5 business days" (Purchase Coll., Off. of Community Standards, Sexual and Interpersonal Violence, Sexual Violence Hearing/Discipline Preparation & Rights, available at https://www.purchase.edu/offices/community-standards/sexual-and-interpersonal-violence/hearing/). It is undisputed that the petitioner had not sought or received any prior extensions of time, and Purchase's policy does not impose any time limits as to when such a request may be made (cf. Matter of Rodriguez v State Bd. for Professional Med. Conduct, 110 AD3d 1268, 1270-1271). Furthermore, the email sent by Jones on the day before the scheduled hearing showed that the request for the delayed starting time was made, at the latest, on the day before the hearing. Given that the petitioner was only provided with notice of the date and time of the hearing a little more than one business day earlier, and given the evidence in the record showing that Purchase refused to speak with the petitioner's attorney until Purchase received a FERPA release form specific to the attorney, which the petitioner provided on Sunday, October 5, there is no basis to conclude that the request was untimely (see Matter of Odom [Commissioner of Labor], 131 AD3d at 1323; cf. Matter of A & U Auto Repair v New York State Dept. of Motor Vehs., 35 AD3d 856, 857). This is particularly true in light of the fact that the requested three-hour delay would not have come close to pushing the disposition of the charges beyond the 60-day window contemplated in Purchase's Sexual and Interpersonal Violence Policy.
The only reason offered by Purchase to justify its denial of the request for a three-hour delay was given in Jones' email, which stated that the request was denied "due to the availability of the people involved in the hearing." I cannot agree that this conclusory explanation, without more, is enough to justify the denial of the minimal delay requested here. Even in the context of this proceeding, Purchase has failed to substantiate this claim by relating what efforts it took to accommodate the petitioner's request and has failed to identify a single individual that would not have been able to appear at the hearing in the event of a three-hour delay. Purchase does not contend that the complainant opposed the petitioner's request for a brief delay, or that she was even made aware of the petitioner's request. There is no basis in the record to conclude that the three-hour delay would have prejudiced the complainant in any way (see Matter of Milrad, 44 AD2d at 289).
Furthermore, it is undisputed that all of the individuals who participated at the hearing were either students or employees of Purchase. Indeed, Purchase acknowledged at oral argument before this Court that "there is nobody that the University would be unable to compel" to attend the hearing. Even if Purchase had demonstrated that certain witnesses would not have been able to [*6]attend the hearing in the event of the three-hour delay, the school's policy explicitly permitted witnesses to provide a written statement or testify by telephone. As it was, the hearing was scheduled at a time when all three of the fact witnesses identified by the petitioner had class, and they were therefore compelled to provide written statements. One of the petitioner's character witnesses also testified over the telephone. Purchase has not attempted to explain why it prioritized the availability of the unnamed "people involved in the hearing" over the availability of the petitioner's witnesses and, more fundamentally, his attorney.
Although the petitioner's attorney would not have been permitted to directly participate at the hearing, he would have been permitted to advise the petitioner during it. The record demonstrates that his assistance would have been beneficial and might well have resulted in a more favorable record. The petitioner's attorney might have advised the petitioner to object to the complainant's reliance on the contents of the surveillance video that was withheld from the petitioner or moved for an adjournment to enable the petitioner to secure it from the District Attorney. The petitioner's attorney might have also advised the petitioner to ask the administrative hearing officers to consider whether the actions of the complainant, as testified to by the petitioner, constituted affirmative consent under Purchase's affirmative consent policy which specifically provides that "[c]onsent can be given by words or actions" (Purchase Coll., Offs. & Servs., Sexual Violence Prevention & Response, Affirmative Consent, available at http://purchase.edu/offices/sexual-violence-prevention-response/affirmative-consent/). As it was, although the administrative hearing officers credited the petitioner's testimony, the written determination only considered whether verbal consent was given.
In sum, the requested three-hour delay in this case was exceedingly minimal and the record does not support Purchase's contention, raised in its brief, that it was "unable to grant the postponement." Given the gravity of the administrative charges facing the petitioner, and the threat of additional criminal charges stemming from an active police investigation, Purchase abused its discretion and violated the petitioner's right to due process when it denied his timely request for a three-hour adjournment of the administrative hearing so that his attorney could attend (see Matter of Messina v Bellmore Fire Dist. Commn., Bd. of Fire Commrs., 242 AD2d at 633; Matter of Crimi v Droskoski, 217 AD2d at 699; Matter of Dennelly v County Attorney of Nassau County, 88 AD2d at 913; Matter of Leonard v Kirby, 84 AD2d 538, 538; Matter of Milrad [Levine], 44 AD2d at 289-290; see also Matter of United Deli Corp. v New York State Liq. Auth., 14 Misc 3d 1220[A], 2007 NY Slip Op 50096[U] [Sup Ct, Kings County]; Matter of Machosky v State Univ. of N.Y. at Oswego, 145 Misc 2d 210, 214 [Sup Ct, Oswego County]).
In reaching their conclusion, our colleagues in the majority fail to engage in any overt analysis of the petitioner's due process argument. It is not enough to say that the petitioner was not entitled to have the school provide him with an attorney, or that he was not denied the opportunity to obtain legal representation, as these issues are irrelevant to this proceeding. The petitioner never requested that Purchase provide him with an attorney, and never argued that he would have been entitled to one if he had asked (cf. Matter of Gruen v Chase, 215 AD2d 481). Nor does the petitioner argue that Purchase failed to provide him with an opportunity to obtain an attorney. Indeed, it is quite clear that the petitioner had an opportunity to obtain legal representation given that he successfully retained an attorney shortly after these charges were leveled against him (cf. Matter of A & U Auto Repair v New York State Dept. of Motor Vehs., 135 AD3d at 857; Matter of Watson v Fiala, 101 AD3d 1649, 1650-1651; Matter of Gell v Carrion, 81 AD3d 953, 953-954; Matter of Baywood Elec. Corp. v New York State Dept. of Labor, 232 AD2d at 554). Since the petitioner is not making these due process arguments, it is wholly unnecessary to analyze them. The use of these "straw man" arguments and the failure to squarely address the nature of the petitioner's actual due process argument betrays the unwarranted deference afforded to Purchase here. The fundamental importance of the right to have the assistance of an attorney during administrative proceedings which may ultimately lead to criminal charges and imprisonment is an issue that deserves to be explicitly addressed, if such a right is to be rejected as a matter of law based on the pleadings.
The cases cited by our colleagues in the majority do not support their conclusion on this point. They are all distinguishable and do not require a different result. The petitioner in Matter [*7]of Fain v Brooklyn Coll. of City Univ. of N.Y. (112 AD2d 992, 994) failed to submit his request for an adjournment in writing as required by the University's standing policy, and his request was denied on that ground. Similarly, in Matter of Mera v Tax Appeals Trib, P.C. (204 AD2d 818), the petitioner's request for a second adjournment was properly denied on the ground that it was untimely and failed to comply with a requirement that an adjournment request include a description of "good cause" for the request. By contrast, the petitioner in this case timely complied with Purchase's policy regarding adjournments, and his request was not denied on the ground that it was improperly made. Notably, our colleagues in the majority do not make any finding that the petitioner's request for an adjournment was untimely or that it was otherwise improperly made.
The petitioner in Matter of Gerber v New York State Dept. of Motor Vehs. (129 AD3d at 960) asked for a second adjournment in a hearing before the Department of Motor Vehicles. The request was denied by the Administrative Law Judge (see id.). There is no indication in that case that the second adjournment request related to the petitioner's right to be represented by counsel (see id.). Moreover, the petitioner in that case was engaged in a simple matter relating to a motor vehicle accident, not facing an ongoing criminal investigation which related to the subject of the administrative proceeding (see id. at 959-960). Given these substantial differences, Matter of Gerber v New York State Dept. of Motor Vehs. (129 AD3d 959) can hardly be said to support, much less compel, the majority's conclusion.
In light of the foregoing, the petition must be granted, the administrative determination annulled, and the matter remitted for a new hearing. Accordingly, we must respectfully dissent.
ENTER:
Aprilanne Agostino
Clerk of the Court